2019 UT App 45

# THE UTAH COURT OF APPEALS

KENYON L. FARLEY AND IRENE FARLEY,
Appellants,
*v.*
UTAH COUNTY,
Appellee.

Opinion
No. 20161078-CA
Filed March 28, 2019

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 150400689

Vincent C. Rampton, Attorney for Appellants

Jody K. Burnett and Robert C. Keller, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HAGEN, Judge:

¶1     Kenyon L. Farley and Irene Farley (collectively,
the Farleys) submitted an application (the Application) to create
an agriculture protection area to shield their land from any
future zoning decisions and municipal regulations that would
interfere with agricultural use. In response to the Application,
Utah County's Board of Commissioners (Utah County) received
two modification requests (the Modification Requests), seeking
to exclude portions of the Farleys' land that might be needed to
widen roads or install utility lines in the future. After
considering the Application and the Modification Requests, Utah
County approved a modified application that excluded the
challenged portions from the agriculture protection area. The

Farleys appealed the decision to the district court, which granted summary judgment in favor of Utah County. The Farleys now appeal the district court's order, arguing that under state and local law, Utah County lacked discretion to do anything except approve the Application. We affirm.

BACKGROUND[1]

¶2 The Farleys are landowners in Utah County. In 2014, they submitted the Application to Utah County, requesting the creation of an agriculture protection area. An agriculture protection area is a geographic area that is granted "specific legal protections," Utah Code Ann. § 17-41-101(3) (LexisNexis 2017), intended to exempt the land from zoning decisions and municipal regulations that would restrict farming practices, *see id.* § 17-41-402 (limitations on local regulations); *id.* § 17-41-403 (nuisances); *id.* § 17-41-404 (policy of state agencies); *id.* § 17-41-405 (eminent domain restrictions); *id.* § 17-41-406 (restrictions on state development projects). Soon thereafter, Utah County received the Modification Requests. First, Payson City Municipal Corporation and Payson City Power and Light (collectively, Payson) requested that Utah County exclude from the protected area an easement where Payson intended to install a utility line at an undetermined time in the future. Second, the Utah County Engineer's Office (the Engineer's Office) requested that Utah County exclude rights-of-way for two roads currently crossing a portion of the proposed agriculture protection area because, according to Utah County's General Plan, these roads had been identified as collector and arterial roads that may be widened at an unspecified time.

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 2 n.4, 406 P.3d 1134 (quotation simplified).

¶3 Pursuant to Utah law, the Application and the Modification Requests were referred to the Utah County Agriculture Protection Area Advisory Board (the Advisory Board) and the Utah County Planning Commission (the Planning Commission) for their separate review, comments, and recommendations. Ultimately, the Advisory Board and the Planning Commission returned conflicting recommendations. The Advisory Board recommended that the Application be approved as originally submitted, while the Planning Commission recommended that it be approved with the Modification Requests.

¶4 Utah County considered the conflicting recommendations at four public hearings. While the Application was under consideration, Utah County and the Farleys discussed potential agreements designed to address the concerns raised by Payson and the Engineer's Office about the potential need to acquire property to widen roads or install utility lines, but no agreement was reached. Consequently, Utah County considered the Application along with the Modification Requests.

¶5 In a two-to-one decision, Utah County approved the Application with the Modification Requests, concluding that its decision was warranted under Utah Code section 17-41-305, which, among other things, required it to consider "anticipated trends in agricultural and technological conditions." *Id.* § 17-41-305(5)(a). Utah County acknowledged that although it wanted to afford the Farleys the protections guaranteed to real property within agriculture protection areas, it also had a duty to protect previously planned corridors. In balancing these conflicting interests, Utah County determined that approving the Application without the Modification Requests would not be in the best interests of the general welfare, health, and safety of its citizens.

¶6 The Farleys filed a complaint with the district court, appealing the decision to exclude portions of their property from the agriculture protection area. In the complaint, the Farleys

alleged that Utah County's decision: (1) was arbitrary, capricious, and contrary to the law; (2) violated their due process rights; (3) violated their equal protection rights; and (4) entitled them to relief under 42 U.S.C. § 1983. In addition, relying on 42 U.S.C. § 1988, the Farleys requested all costs and attorney fees.

¶7    Utah County and the Farleys filed cross-motions for summary judgment. After hearing argument on the motions, the district court granted summary judgment in favor of Utah County. In its order, the district court first determined that the governing statutes provided Utah County with discretion in deciding whether to approve the Application with or without the Modification Requests, and that, at a minimum, Utah County's decision was reasonably debatable. Second, the court concluded that because the Farleys had only a unilateral expectation that Utah County would approve the Application without the Modification Requests, their due process rights had not been violated. Finally, the court determined that the Farleys had failed to demonstrate that they had been treated differently from similarly situated landowners and that Utah County had acted with personal animus to deny them equal protection of the laws. The district court did not address the Farleys' claims under § 1983 and § 1988.

¶8    The Farleys appeal.

ISSUE AND STANDARD OF REVIEW

¶9    The Farleys contend the district court erred in granting summary judgment in favor of Utah County. Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). On appeal, we review a district court's grant of summary judgment for correctness, affording no deference to the court's legal conclusions. *See Baker v. Park City Mun. Corp.*, 2017 UT App 190, ¶ 12, 405 P.3d 962.

ANALYSIS

¶10   The Farleys' challenge to the district court's ruling presents three issues for our consideration. First, they contend that Utah County exceeded its discretion in approving the Application with modifications. Specifically, the Farleys argue that under the Agricultural and Industrial Protection Areas Act (the Act), *see generally* Utah Code Ann. §§ 14-41-101 to -503 (LexisNexis 2017), Utah County was required to approve the Application without modification and that failure to do so was contrary to law. Second, the Farleys contend that Utah County violated their due process rights. Finally, the Farleys argue that Utah County's decision to modify and approve the Application denied them equal protection of the laws.[2] We address each argument in turn.

I. Statutory Interpretation

¶11   The Farleys contend that Utah County acted contrary to law when it approved the Application subject to the Modification Requests. The parties dispute whether Utah County's action was a legislative or adjudicative decision, which

---

2. The Farleys also argue that they "should have been permitted to pursue their claims under 42 U.S.C. § 1983." The Farleys concede that a § 1983 claim "is dependent on the deprivation of rights secured by the Constitution and law of the United States" and assert that the reasons set forth in their arguments relating to due process and equal protection show that they were deprived of their rights secured by the United States Constitution and federal law. *See* 42 U.S.C. § 1983 (2012). Because we conclude that the Farleys have not established that Utah County deprived them of "any rights, privileges, or immunities secured by the Constitution," their § 1983 claims fail as a matter of law. *See id.*; *see also see infra* ¶¶ 24–29. For that reason, they are not entitled to attorney fees under § 1988.

would impact the degree of deference afforded to that decision.[3] Even assuming, without deciding, that the decision was adjudicative, as the Farley's contend, this court must presume that the decision was valid and uphold the decision unless it was (A) illegal or (B) arbitrary and capricious. *See* Utah Code Ann. § 17-27a-801(3) (LexisNexis Supp. 2018). The Farleys have not established either basis for overturning Utah County's decision.

A.      Utah County's Decision Was Not Illegal

¶12     The Farleys' primary argument is that Utah County's decision was illegal. A land use decision is illegal if it is "(A) based on an incorrect interpretation of a land use regulation; or (B) contrary to law." Utah Code Ann. § 17-27a-801(3)(c)(ii) (LexisNexis Supp. 2018). The Farleys argue that it was undisputed that all portions of their property met the criteria listed in Utah Code section 17-41-305 and, as a matter of law, Utah County could do nothing but approve the Application without modification. In other words, they argue that Utah County had no discretion to make the decision it made. We disagree.

¶13     When interpreting a statute, our goal is to give effect to the legislature's intent in light of the statute's intended purpose. *See Garfield County v. United States*, 2017 UT 41, ¶ 15, 424 P.3d 46. "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (quotation simplified). Where the statute's plain language is unambiguous, we need not look to

---

3. Land use regulations enacted by a legislative body are reviewed under a "reasonably debatable" standard, whereas adjudicative land use decisions are reviewed under an "arbitrary and capricious" standard that requires the decision to be "supported by substantial evidence in the record." Utah Code Ann. § 17-27a-801(3)(a)–(c) (LexisNexis Supp. 2018).

secondary considerations, such as legislative history. *See Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 15, 227 P.3d 256.

¶14 The mere fact that both parties can articulate alternative interpretations of the statutory language is not enough to create an ambiguity. "Where both sides offer conceivable constructions of the language in question . . . the statutory text may not be 'plain' when read in isolation, but may become so in light of its linguistic, structural, and statutory context." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465 (quotation simplified). Accordingly, "a proposed interpretation that is plausible in isolation may . . . lose its persuasive effect when we seek to harmonize it with the rest of the statutory scheme." *Oliver v. Utah Labor Comm'n*, 2017 UT 39, ¶ 21, 424 P.3d 22 (quotation simplified). With these principles in mind, we turn to the case before us.

¶15 To understand the procedure for evaluating and approving applications for the creation of agriculture protection areas, we begin with an overview of the relevant sections of the Act. Upon receiving an application for an agriculture protection area, the applicable legislative body shall provide notice to the public, advising that persons or entities affected by the creation of the area may file written objections or modification requests. *See generally* Utah Code Ann. § 17-41-302 (LexisNexis 2017). In addition, the notice must indicate that the legislative body will hold a hearing at which it will discuss or hear public comment on the application as a whole. *Id.* § 17-41-302(2)(e)–(f).

¶16 After notice has been provided, the application and any proposed modifications are then referred to the Advisory Board and the Planning Commission for their review, comments, and recommendation. *Id.* § 17-41-303(1). As part of their review, the Advisory Board and the Planning Commission shall submit a written report that:

- "analyzes and evaluates the proposal by applying the criteria contained in Section 17-41-305";

- "recommends any modifications to the land to be included in the proposed agriculture protection area . . .";

- "analyzes and evaluates any objections to the proposal; and"

- "includes a recommendation to the applicable legislative body either to accept, accept and modify, or reject the proposal."

*Id.* § 17-41-303(2)(a)(ii)–(v), (2)(b)(ii)–(iv). The relevant criteria contained in section 17-41-305 that are to be analyzed and evaluated in the agency's report are: (1) "whether or not the land is currently being used for agriculture production"; (2) "whether or not the land is zoned for agriculture use"; (3) "whether or not the land is viable for agriculture production"; (4) "the extent and nature of existing or proposed farm improvements"; and (5) "anticipated trends in agricultural and technological conditions." *Id.* § 17-41-305. In addition to these common factors evaluated by both agencies, the Planning Commission must also "analyze[] and evaluate[] the effect of the creation of the proposed area on the planning policies and objectives of the county or municipality." *Id.* § 17-41-303(2)(a)(i).

¶17 After receiving both reports and holding a public hearing, the applicable legislative body must then decide whether to "approve, modify and approve, or reject" the application. *Id.* § 17-41-304(3)(a). Here, after receiving conflicting recommendations from the Advisory Board and the Planning Commission, as well as holding four public hearings, Utah County elected to modify and approve the Application—a decision we conclude it had the discretion to make.

¶18 Contrary to the Farleys' interpretation, Utah County was not required to approve the Application without modification so long as each portion of their land met the criteria set out in

section 17-41-305. While this proposed interpretation may appear plausible in isolation, it loses its persuasive effect when read in conjunction with sections 17-41-303 and 17-41-304. *See Oliver*, 2017 UT 39, ¶ 21.

¶19 Utah Code section 17-41-305 provides that certain criteria shall be considered by the legislative body "in determining whether or not to create or recommend the creation of an agriculture protection area," but it does not mandate approval of an application that meets all five criteria. *See* Utah Code Ann. § 17-41-305 (LexisNexis 2017). And not all of the criteria enumerated in Utah Code section 17-41-305 can be objectively met. While the considerations presented in subsections (1)–(3) are based on existing conditions and can be answered in either the affirmative or the negative, those presented in subsections (4)–(5) cannot. Instead, the latter criteria are more forward-looking inquiries that require the Advisory Board, the Planning Commission, and the legislative body to analyze "existing and proposed farm improvements" and "anticipated trends in agricultural and technological conditions." *Id.* § 17-41-305(4)–(5) If the criteria in section 17-41-305 could be mechanically applied and if approval followed automatically whenever those criteria were met, there would be little need for two agencies to separately review the application and make recommendations, and for the legislative body to hold a public hearing and then decide whether to "approve, modify and approve, or reject" an application. *See id.* § 17-41-304(3)(a).

¶20 Moreover, the statutory scheme does not limit the Advisory Board and the Planning Commission to offering their assessment on whether the criteria under section 17-41-305 are satisfied. Indeed, the Planning Commission is require to also "analyze[] and evaluate[] the effect of the creation of the proposed area on the planning policies and objectives of the county or municipality." *Id.* § 17-41-303(2)(a)(i). Such a requirement would be meaningless if the legislative body that reviews the Planning Commission's report could not consider that factor. Because the Act requires an evaluation of factors

beyond those criteria listed in section 17-41-305, the statutory scheme as a whole does not support the conclusion that an application must be approved if those five criteria are "satisfied." Therefore, the plain language of the Act unambiguously grants Utah County discretion in deciding whether to approve and modify the creation of an agriculture protection area.[4]

### B. Utah County's Decision Was Not Arbitrary and Capricious

¶21    The Farleys also contend that Utah County's decision was arbitrary and capricious. "A decision is arbitrary and capricious if the decision is not supported by substantial evidence in the record." Utah Code Ann. § 17-27a-801(3)(c)(i) (LexisNexis Supp. 2018). Substantial evidence "is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 21, 38 P.3d 291 (quotation simplified).

¶22    Here, the Farleys contend Utah County made no findings to support its decision that the modifications to the Application were appropriate, and "[t]o the extent that factual findings were made," "all findings of fact went in [the Farleys] favor." "To determine whether substantial evidence supports [Utah County's] decision, we consider all of the evidence in the record

---

4. Our interpretation of the Act is not negated by the Farleys' allegation that Utah County's decision was based solely on its desire to subvert the additional protections afforded by sections 17-41-405 and 17-41-406, because, significantly, those protections are afforded only after the land has been included "within an agriculture protection area." *See* Utah Code Ann. §§ 17-41-405(1)–(2), -406(1), (3) (LexisNexis 2017). Put differently, an application to create an agriculture protection area must be approved before those protections are implicated.

but do not weigh the evidence anew or substitute our judgment for that of the municipality." *See LJ Mascaro Inc. v. Herriman City*, 2018 UT App 127, ¶ 20, 428 P.3d 4 (quotation simplified). We will not disturb Utah County's decision "so long as a reasonable mind could reach the same conclusion." *Id.* (quotation simplified). Given the nature of our review of Utah County's decision, "it is incumbent upon [the Farleys] . . . to marshal all of the evidence in support thereof and show that despite the supporting facts, and in light of conflicting or contradictory evidence, the decision is not supported by substantial evidence." *See Carlsen v. Board of Adjustment of City of Smithfield*, 2012 UT App 260, ¶ 5, 287 P.3d 440 (quotation simplified).

¶23  The Farleys have made no effort to marshal any of the numerous findings made by Utah County in support of its decision. Nor have they marshalled any "conflicting or contradictory evidence" in support of their argument to show that Utah County's decision was not based on substantial evidence. *See id.* (quotation simplified). "By failing to address the evidence that supports [Utah County's] decision" or "conflicting or contradictory evidence," *see id.* ¶¶ 5, 7 (quotation simplified), the Farleys have failed to carry their burden of persuasion on appeal, *see Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 20, 391 P.3d 148 (explaining that an appellant's failure to marshal record evidence is no longer a "technical deficiency," but such failure "will almost certainly" result in the appellant's "fail[ure] to carry its burden of persuasion on appeal" (quotation simplified)).

## II. Due Process

¶24  The Farleys next contend that Utah County violated their substantive due process rights. Among other protections, the Fourteenth Amendment prohibits states from "depriv[ing] any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process

ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

¶25　To prevail on either a procedural or substantive due process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Zia Shadows, LLC v. Las Cruces City*, 829 F.3d 1232, 1237 (10th Cir. 2016) (quotation simplified). The United States Supreme Court has stated that a "property interest" is "more than a unilateral expectation"; instead, it is a "legitimate claim of entitlement." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Petersen v. Riverton City*, 2010 UT 58, ¶ 22, 243 P.3d 1261 ("A property interest exists only where existing rules and understandings that stem from an independent source such as state law secure certain benefits and support claims of entitlement to those benefits." (quotation simplified)). In municipal land use regulation cases, such as this, the entitlement analysis focuses "on the degree of discretion given the decision maker." *Hyde Park*, 226 F.3d at 1210 (quotation simplified). Therefore, the Farleys must demonstrate that state and local law establish specific conditions, "the fulfillment of which would give rise to a legitimate expectation" that Utah County would approve the Application as submitted. *See id.* (quotation simplified).

¶26　The Farleys contend that a landowner has "the right to approval of a development or other land-related application 'if his proposed development meets the zoning requirements in existence at the time of his application and if he proceeds with reasonable diligence, absent a compelling, countervailing public interest.'" (Quoting *Western Land Equities, Inc. v. Logan City*, 617 P.2d 388, 396 (Utah 1980).) Specifically, they argue that because all portions of their property satisfied the factors set out in Utah Code section 17-41-305—the law in effect at the time—the Application was entitled to a favorable decision from Utah County, that is, approval without the Modification Requests.

¶27 The Farleys' reliance on section 17-41-305 alone is misplaced. As discussed, *supra* ¶¶ 15–17, approval of applications for agriculture protection zone status is governed by sections 17-41-303 through 17-41-305. Significantly, under section 17-41-304, Utah County had discretion to "approve, modify and approve, or reject" the Application. *See* Utah Code Ann. § 17-41-304(3)(a) (LexisNexis 2017). In addition, the Act allows "any person or entity affected by the establishment of the area" to file written objections and proposed modifications, *see id.* § 17-41-302(2)(c), which the Advisory Board and the Planning Commission "shall" consider when compiling their report to the applicable legislative body, *see id.* § 17-41-303(2)(a). And although it may be true that section 17-41-305 requires that municipalities consider certain enumerated criteria in reviewing applications, the Act does not provide that fulfillment of those criteria strips municipalities of discretion and mandates approval. *See generally id.* §§ 17-41-303, -304, -305. Indeed, the criteria under subsection 17-41-303(2) relating to the Planning Commission's and the Advisory Board's analysis of "objections" to an application and their discretion to "recommend . . . either to accept, accept and modify, or reject" an application are not conditions that can be objectively satisfied, as the Farleys argue, but are subjective considerations that those entities must take into account when reviewing an application. *See id.* § 17-41-303(2); *see also supra* ¶ 19.

¶28 Because the Act does not require approval of the Application if definitive conditions are met, the Farleys had no legitimate claim of entitlement to the creation of an agriculture protection area. Instead, the Farleys had only a unilateral expectation that Utah County would approve the Application without the Modification Requests, not a protectable property interest necessary to assert a due process claim.

### III. Equal Protection

¶29 Relying on the "class of one" theory established in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), the

Farleys next contend that Utah County violated their equal protection rights by singling them out for disparate treatment without a rational basis to do so. *See id.* at 564 (quotation simplified). Under the "class of one" theory, it is the Farleys' burden to show that: (1) they have "been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *See id.* (quotation simplified).

¶30   The Farleys have presented no evidence showing that similarly situated landowners applying for agriculture protection area status were treated more favorably by Utah County. Their equal protection claim rests entirely on a statement made by a county deputy attorney who was asked by the County Commissioners "whether similar measures have previously been taken for agriculture protection areas." In response, the deputy attorney stated, "[N]ot to his knowledge."

¶31   The Farleys cannot carry their burden based on the deputy attorney's statement alone. The statement does not speak to whether similarly-situated applicants exist and, if so, whether those applicants were treated more favorably than the Farleys. In arguing that neither Utah County nor the district court identified a single applicant that was treated like them, the Farleys have attempted to shift the burden of proof. But it is the Farleys who must establish that similarly-situated landowners received more favorable treatment, and it is insufficient for them to allege that they were a "trial balloon" or a case of "first impression." Instead, they must identify comparators that are "similarly situated in all material respects," which is a "substantial burden" in this context because "each property has unique characteristics." *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217–18 (10th Cir. 2011); *id.* at 1218 (stating that this requirement prevents "a flood of claims in that area of government action where discretion is high and variation is common"). Because the Farleys have failed to identify facts that tend to demonstrate that they were treated differently from other similarly situated landowners, their equal protection claim

fails as a matter of law, and we need not address whether there was a rational basis for Utah County's decision.

CONCLUSION

¶32   We conclude that Utah County was entitled to summary judgment as a matter of law. First, under the Act, Utah County had discretion to modify the Application for the creation of an agriculture protection area and the Farleys have not demonstrated that Utah County exercised that discretion in an arbitrary and capricious manner. Second, due to that discretion, the Farleys had only a unilateral expectation of a favorable decision, which is insufficient to establish a due process claim. Finally, we conclude that the Farleys did not make the necessary showing to establish an equal protection claim. Accordingly, we affirm.

_____