**2022 UT 10**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

NORTHERN MONTICELLO ALLIANCE, LLC,
*Appellee,*

*v.*

SAN JUAN COUNTY,[1]
*Appellants.*

No. 20200563
Heard September 13, 2021
Filed February 24, 2022

On Certiorari to the Utah Court of Appeals

Seventh District, Monticello
The Honorable Lyle R. Anderson
No. 170700006

Attorneys:

Barton H. Kunz II, Salt Lake City, for appellants San Juan County
and San Juan County Commission

Paul W. Shakespear, Elizabeth M. Brereton, Salt Lake City, for
appellants Sustainable Power Group, LLC, and Latigo Wind Park,
LLC

J. Craig Smith, Jennie B. Garner, Salt Lake City, for appellee
Northern Monticello Alliance, LLC

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

---

[1] Other appellants in this case are: San Juan County Commission,
Sustainable Power Group, LLC, and Latigo Wind Park, LLC.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1    This case involves a curiously complex set of appeals stemming from the San Juan County Planning and Zoning Commission's decision not to revoke a wind farm's conditional use permit (CUP). Northern Monticello Alliance (NMA), a limited liability company comprised of individual landowners whose property is adjacent to the wind farm, contends that it had a right to participate in the revocation hearing, which was denied to it. Our court of appeals agreed, finding that NMA had a due process right to participate in the revocation hearing that corresponded with the right to appeal the decision of the hearing.

¶2    Although we agree with the court of appeals that NMA had a right to appeal the Planning Commission's decision not to revoke the CUP, we disagree that this right to appeal necessarily provides it with the right to participate in the revocation hearing. Neither the Utah Code, the San Juan County Zoning Ordinance (at times, the Zoning Ordinance), nor the conditions in the CUP itself provide NMA with such a right, nor do they create a protected interest in the enforcement of the CUP.

## BACKGROUND

### I. FACTUAL BACKGROUND

¶3    In 2012, the San Juan County Planning and Zoning Commission issued a CUP to Wasatch Wind Intermountain, LLC, to allow for the construction of a wind farm on undeveloped land in San Juan County.[2] Three months later, the Planning Commission held a public hearing, at which they amended the previously issued CUP.[3] The now-amended CUP required current and future

---

[2] This case reached our court of appeals on appeal from the district court's grant of summary judgment. As such, we recite the facts in the light most favorable to NMA, the nonmoving party. *Judge v. Saltz Plastic Surgery, P.C.*, 2016 UT 7, ¶ 3 n.1, 367 P.3d 1006; *see also Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 7, 416 P.3d 1148.

[3] As NMA noted in its brief to us, there exists no written document setting forth the terms of the amended CUP or the mitigation conditions attached to it. The conditions instead "must be gleaned from the minutes and transcript" of the public hearing.

permittees "to incorporate as much flicker, light, sound, mitigation as possible, and to meet all industry standards of those challenges."[4]

---

[4] According to NMA, the CUP also required the holder of the CUP to purchase the NMA property under purchase agreements executed in February 2013. But this fact is unsupported by the record. The Planning Commission, at the hearing amending the CUP, only put an addendum on the CUP "to incorporate as much flicker, light, sound, mitigation as possible, and to meet all industry standards of those challenges . . . reiterating that all and any new land purchase lease deals be in writing for any contiguous and affected landowners. . . . [A]ny mitigation and standards and conditions of this CUP must be met by any and all project development people, be they owners now or in the future, and all of these be met at the time of building permit issuance." And throughout that same hearing, the Planning Commission made clear that any private deal or purchase agreement between NMA and Wasatch Wind was outside the realm of the CUP's conditions. Indeed, the Chairwoman at the hearing said: "[T]his Board cannot regulate private deals;" "purchase and lease agreements, that's up to [NMA and Wasatch Wind/Latigo Wind Park];" "we don't get to enforce [purchase and lease agreements], we can't tell them what land to buy or who to buy it from;" and "[i]f they don't work a deal, they don't work a deal. That's not up to us, nor is it up to our conditions." And in its brief to the County Commission regarding NMA's appeal of its decision, the Planning Commission again emphasized that the conditions placed on the CUP did not include any requirement to purchase the land, because the Planning Commission "was not comfortable addressing such topics as land payments as mitigation measures because it believes such topics are considered private matters to be settled privately between the parties—not to be meddled in by the [Planning Commission]." The Planning Commission concluded that if the holder of the CUP "wants to self-impose conditions on itself with its neighbors it should be permitted to do so, but the [Planning Commission] will not interfere nor be involved with the negotiation or enforcement of such conditions."

Thus, although we recite the facts in the light most favorable to NMA, *supra* ¶ 3 n.3, we will not recite facts unsupported, and contradicted, by the record below. *See Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 477-78 (Utah 1996) ("[B]are contentions, unsupported by any specification of facts in support thereof, raise no material

Later, Wasatch Wind sold the wind park to Sustainable Power Group, LLC (sPower).

¶4 In August 2015, NMA complained to the Planning Commission that sPower was not fulfilling the conditions of its CUP.[5] The Planning Commission voted to hold a hearing to consider revoking the CUP. NMA attended this hearing but was not allowed to participate; only sPower was permitted to present evidence. Several days later, the Planning Commission voted not to revoke the CUP.

¶5 Following the Planning Commission's decision not to revoke the CUP, NMA appealed to the San Juan County Commission. The County Commission held a hearing and subsequently issued a written decision reversing the Planning Commission's decision and remanding the matter back to the Planning Commission, indicating that sPower had provided insufficient evidence that it had satisfied the conditions of the CUP. Shortly after this decision, the County Commission received a letter from sPower asking the County Commission to reconsider its decision; sPower did not copy NMA on this letter. The County Commission held a closed meeting to consider the letter, and then issued an amendment to its written decision—this time upholding the Planning Commission's decision not to revoke the CUP.

¶6 NMA appealed the County Commission's amended decision to the district court, which, in turn, remanded the case back to the County Commission because of due process violations. The court concluded that "the County's decision to reconsider its earlier order was illegal because it violated NMA's due process rights" in that it was based on an "ex parte communication" and NMA was neither given notice nor an opportunity to be heard. It remanded the case to the County Commission specifically to give NMA a chance to be heard and respond to sPower's letter requesting reconsideration. On remand, the County Commission heard from both NMA and

---

questions of fact as will preclude the entry of summary judgment." (quoting *Massey v. Utah Power & Light*, 609 P.2d 937, 938 (Utah 1980)).

[5] Technically speaking, the CUP is an amended permit issued to Latigo Wind Park in 2012. Latigo Wind Park is now a wholly-owned subsidiary of sPower. For the reader's sake, and unless the distinction matters, we refer to the amended CUP as only the CUP and to Sustainable Power Group and Latigo Wind Farm collectively as sPower.

sPower on this matter. The County Commission subsequently upheld the Planning Commission's decision not to revoke the CUP.

¶7   NMA again appealed the County Commission's decision to the district court. Both parties moved for summary judgment. The district court granted the County's motion for summary judgment, finding that, because the County Commission heard from NMA on sPower's letter and request for reconsideration, the decision was supported by substantial evidence and no longer illegal. NMA then appealed to the court of appeals.

## II. THE COURT OF APPEALS' DECISION

¶8   A majority of the court of appeals panel voted to reverse the district court's grant of summary judgment and to remand the case because it determined that NMA members had due process rights granted by the County Land Use, Development, and Management Act (CLUDMA) and the relevant sections of the San Juan County Zoning Ordinance.[6] *N. Monticello All. LLC v. San Juan Cnty.*, 2020 UT App 79, ¶¶ 10–15, 438 P.3d 537. Judge Christiansen Forster concurred in the result, but concluded that the due process rights flowed, instead, from a protectable property interest in San Juan County's enforcement of the mitigation conditions placed upon the CUP. *Id.* ¶¶ 27–28 (Christiansen Forster, J., concurring).

¶9   The majority opinion rested on provisions of CLUDMA and the Zoning Ordinance that provided NMA the right to appeal and then instructed the appeal authority to "respect the due process rights of" the participants on appeal. *See id.* ¶ 11 (citing UTAH CODE §§ 17-27a-703(1); 17-27a-706(2); SAN JUAN COUNTY, UTAH, ZONING ORDINANCE (SJCZO) §§ 2-2(2)(f); 6-4; 6-7 (2011)). The court held that since NMA had due process rights on appeal, it necessarily was afforded those rights throughout the entirety of the proceeding:

> Indeed, the appeal authority is required to 'respect the due process rights' of adversely affected parties, and it cannot uphold those rights if the party was denied due

---

[6] For the most part, the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect. Thus, unless otherwise noted, we cite to the current version of the Utah Code for convenience. *See N. Monticello All. LLC v. San Juan Cnty.*, 2020 UT App 79, ¶ 4 n.5, 438 P.2d 537. In contrast, we cite solely to the San Juan County Zoning Ordinance as amended in 2011.

process in the pivotal initial stages of the proceeding. Otherwise, the appeal authority will be reviewing a proceeding in which the adversely affected party was unable to present evidence or be properly heard — a meaningless exercise.

*Id.* ¶ 13 (citation omitted). The court continued by saying that if there were no right to participate below, "any adversely affected or aggrieved party could be muzzled at an initial hearing and barred from presenting evidence to counter its opponent's evidence, and then the appeal authority would be essentially powerless to overturn the initial decision because there would be no contrary evidence in the record." *Id.*

¶10 The court of appeals also noted that the statutory scheme, "when considered in conjunction with the county zoning ordinance . . . clearly provide[d] protections to adjacent property owners who are harmed by a CUP from the beginning," which bolstered the court's conclusion that NMA had a due process right to present evidence. *Id.* ¶ 14. "[A] scheme designed to protect and mitigate injury to adversely affected or aggrieved adjacent landowners, but does not give them the ability to properly present their evidence, is no protection at all." *Id.*

¶11 The court of appeals ultimately held that NMA was denied due process when it was prevented from presenting evidence at the revocation hearing and instructed the district court "to remand the case to the County Commission for it to take evidence from NMA as previously mandated or, if it is not in a position to itself receive the evidence, to in turn remand to the Planning Commission so that it can do so." *Id.* ¶ 19.

¶12 Judge Christiansen Forster concurred in the decision but on different grounds. While she agreed with the majority that NMA had a due process right to be heard and participate in the Planning Commission's revocation hearing, she did not agree that CLUDMA and the Zoning Ordinance gave rise to that right. Instead, she based this right on the fact that the "CUP imposed mitigation conditions on sPower for the protection of NMA members' property as a condition of approval," which gave NMA "a legitimate claim of entitlement in the enforcement of" the mitigation required by the CUP. *Id.* ¶ 27 (Christiansen Forster, J., concurring) (footnote omitted). In Judge Christiansen Forster's view, then, NMA had a protected property interest in the county's enforcement of the mitigation required by the CUP, which ultimately gave NMA "the right to be heard and present evidence at the revocation hearing." *Id.* ¶ 28. But in her view, that

right arose from the Planning Commission's specific approval of the CUP, with the mitigation requirements, rather than from the statute and Zoning Ordinance more generally. *Id.* ¶ 28.

¶13 We granted San Juan County and sPower's joint petition for certiorari on the question of "[w]hether the majority of the panel of the Court of Appeals erred in concluding that [NMA] had a right to present evidence to the San Juan County Planning Commission that corresponded to a right to appeal that Commission's decision."[7]

## III. THE PARTIES' ARGUMENTS

¶14 In their briefs before this court, the County and sPower argue three alternative points for why the court of appeals' decision should be reversed. First, they argue that the County Commission's acceptance of evidence from NMA on appeal "cured" any due process error that occurred when the Planning Commission refused to take evidence from anyone other than sPower. Alternatively, they argue that NMA lacked a constitutional due process right to present evidence in the revocation hearing because (1) a purely procedural right to administrative review does not create a due process right and (2) a due process right cannot attach to an enforcement action that is left to a government entity's discretion, as was the case here. Third, and also in the alternative, they argue that NMA lacked a statutory or ordinance-based right to appeal the Planning

---

[7] This grant of certiorari referenced the court of appeals' majority decision and reasoning. And in their opening brief to us, the County and sPower limited their arguments to addressing the majority's reasoning. In its response brief, NMA urged us to also consider the issue raised by the concurrence in the court of appeals, *see supra* ¶ 12, noting that we could affirm on this alternative ground. *See, e.g.*, *Collins v. Sandy Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267 ("We may affirm the court of appeals' decision on any ground supported in the record."); *PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 34, 424 P.3d 162 ("When a party raises alternative grounds for affirmance, an appellate court may affirm the judgment appealed from on any legal ground or theory apparent on the record." (emphasis omitted) (citation omitted) (internal quotation marks omitted)). The County and sPower responded to NMA's arguments on this issue in their reply brief, and thus the issue is fully briefed before us. We accordingly address it, and as explained below, ultimately decline to affirm the court of appeals on this alternate ground.

Commission's decision under Utah Code section 17-27a-703(1) (2009) and the San Juan Zoning Ordinance sections 2-2(2) and 6-7.

¶15 NMA, on the other hand, urges us to affirm the court of appeals. It argues that, as an adversely affected party, it had a right to appeal the Planning Commission's decision under both CLUDMA and the relevant sections of the Zoning Ordinance. It also argues that its members have a protectable property interest in the enforcement of the CUP. In its view, both the statute and the Zoning Ordinance afford its members due process rights as adjacent property owners. Additionally, NMA argues that the placement of specific mitigation conditions on the CUP grants it a protected interest, leading to a due process right to participate in the revocation hearing. Finally, NMA argues that the due process violation that occurred when it was not allowed to participate in the revocation hearing was not cured by the appeal to the County Commission because the County Commission reviews the Planning Commission's decision on the record and reverses only if the decision is "arbitrary, capricious, or illegal." SJCZO § 2-2(2)(e).

## STANDARD OF REVIEW

¶16 "On certiorari, 'we review the decision of the court of appeals and not that of the district court.' And 'we review the decision of the court of appeals for correctness.'" *Taylor v. Univ. of Utah*, 2020 UT 21, ¶ 12, 466 P.3d 124 (citation omitted).

## ANALYSIS

¶17 While we agree with the court of appeals that NMA had a right to appeal the Planning Commission's decision to the County Commission, we hold that this right does not correspond to a right to present evidence to the Planning Commission. Nothing in CLUDMA or the Zoning Ordinance provide NMA with a right to present evidence to the Planning Commission, and the right to appeal is purely procedural, not a grant of substantive due process. As we explain below, neither CLUDMA nor the Zoning Ordinance create a protected interest in the enforcement of the CUP and the right to present evidence to the Planning Commission. Nor are we convinced that the placement of specific mitigating conditions on sPower's permit gave NMA a protected interest in the enforcement of the CUP or the right to participate in the revocation hearing. As such, we reverse the decision of the court of appeals and remand the case back to that court to address any remaining issues properly raised before it.

## I. NMA HAD THE RIGHT TO APPEAL THE PLANNING COMMISSION'S DECISION TO THE COUNTY COMMISSION

¶18 We agree with the court of appeals that NMA had the right to appeal to the County Commission.

¶19 At the relevant time, Utah Code section 17-27a-703(1) (2009)[8] provided that, "any person adversely affected by the land use authority's decision administering or interpreting a land use ordinance may . . . appeal that decision to the appeal authority by alleging that there is error in any order, requirement, decision, or determination made by the land use authority in the administration or interpretation of the land use ordinance." We agree with the court of appeals, and sPower and the County do not dispute, that NMA is adversely affected by the Planning Commission's decision.[9] *See N. Monticello All. LLC v. San Juan Cnty.*, 2020 UT 79, ¶ 12, 468 P.3d 537.

¶20 The County and sPower argue that NMA did not have a right to appeal the Planning Commission's decision not to revoke the CUP to the County Commission under section 17-27a-703(1) because the decision was not a decision "administering or interpreting" a land use ordinance. We disagree. The decision was administering the section of the Zoning Ordinance regarding revocation of CUPs. SJCZO § 6-10 (2011). So, NMA had a right to appeal the Planning Commission's decision to the County Commission, which sat as the appeal authority under Utah Code section 17-27a-701.

¶21 Even finding that NMA had a right to appeal to the County Commission, we disagree with the court of appeals that this right to appeal, coupled with the generic language requiring the County Commission to "respect the due process rights" of participants to the appeal, means that NMA had a due process right to be heard by the Planning Commission.

---

[8] The statute was amended slightly in 2020 and so we cite here to the version that went in effect in 2009 and was current in 2015 when NMA appealed the Planning Commission's decision to the County Commission. *Compare* UTAH CODE § 17-27a-703(1) (current), *with id.* § 17-27a-703(1) (2009).

[9] While NMA, a limited liability company comprised of individual landowners, is not a "person" in the colloquial sense, it meets CLUDMA's definition of person: "[A]n individual, corporation, partnership, organization, association, trust, governmental agency, or any other legal entity." UTAH CODE § 17-27a-103(51).

## II. NMA DID NOT HAVE A RIGHT TO PRESENT EVIDENCE IN THE PLANNING COMMISSION'S REVOCATION HEARING

### *A. Neither the Statute nor the Zoning Ordinance Provide Adjacent Landowners or Adversely Affected Parties a Right to Participate in Revocation Hearings*

¶22 NMA argues that it had a statutory and ordinance-based right to participate in the revocation hearing. Specifically, it finds this right under CLUDMA and the San Juan County Zoning Ordinance. For the reasons below, we disagree.

¶23 When interpreting statutes and ordinances, we begin by looking at their plain language, which is "the best evidence of legislative intent." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 9, 428 P.3d 1096 (citation omitted). Our plain language analysis looks both at the statutes and ordinances in question, as well as other applicable provisions of law, seeking to read them all together in a harmonious way. *See Kamoe v. Ridge*, 2021 UT 5, ¶¶ 15–16, 483 P.3d 720 (noting that we interpret statutes "in harmony with other statutes in the same chapter and related chapters" (citation omitted)); *Murray City v. Hall*, 663 P.2d 1314, 1317 (Utah 1983) ("Ordinances are to be construed in the light of, and in harmony with, applicable provisions of charter, state law, constitution, and public policy." (citation omitted)). Additionally, "an ordinance enacted pursuant to a statute should be construed by reading it with the statute." *Murray City*, 663 P.2d at 1317 (citation omitted). Only if the plain language of the statute or the ordinance is ambiguous do we look beyond the text itself. *See State v. Bess*, 2019 UT 70, ¶ 25, 473 P.3d 157; *cf. Bryner*, 2018 UT 52, ¶¶ 9–10.

¶24 We thus analyze CLUDMA and the San Juan County Zoning Ordinance together, looking first at their plain language, to determine whether or not NMA had a participatory right in the revocation hearing.

¶25 NMA has not pointed to, nor have we been able to find, any statute or provision in the Zoning Ordinance explicitly giving it a right to participate in the revocation hearing. In fact, the plain language of CLUDMA and the Zoning Ordinance, when read together, shows that only sPower as the permittee had a right to participate in the revocation hearing.[10]

---

[10] This does not mean that the Planning Commission cannot, or should not, choose to allow other parties to participate in the

¶26 The Zoning Ordinance requires the Planning Commission to hold a hearing when considering revoking a CUP. SJCZO § 6-10 (2011). Notably, however, it does not require the Planning Commission to hold a *public* hearing. A public hearing, under both CLUDMA and the Zoning Ordinance, is a "hearing at which members of the public are provided a reasonable opportunity to comment on the subject of the hearing." UTAH CODE § 17-27a-103(57); SJCZO § 1-5(77). The Zoning Ordinance provides explicitly for a public hearing in multiple places. *See* SJCZO § 2-1(5)(a)(v) (requiring the Planning Commission to hold public hearings on contested land use applications and to allow all participants to be heard); *id.* § 12-4(4) (requiring the County Commission to "advertise for and hold a public hearing to receive public input in order to make an informed decision" on a proposed subzone designation); *id.* § 6-6 (giving the Planning Commission the option to hold a public hearing on a CUP application if it is deemed "necessary and in the public interest").

¶27 In contrast, the section of the Zoning Ordinance regarding revocation of the CUP states that "no conditional use permit shall be revoked until a *hearing* is held by the Planning Commission. The permittee shall be notified in writing of such hearing. . . . At the hearing, the permittee shall be given an opportunity to be heard. The permittee may call witnesses and present evidence." *Id.* § 6-10 (emphasis added). Clearly, this is not a public hearing, but rather a hearing providing the holder of a CUP (the permittee) the opportunity to be heard before their CUP is revoked. Nothing in the Zoning Ordinance or CLUDMA refers at all to the rights of adversely affected or aggrieved parties to participate in the revocation hearing; in fact, no provision refers to *any* party other than the permittee being allowed to participate. As such, no one

---

revocation hearing, or consider evidence from those challenging a CUP. In fact, in some situations it may be arbitrary and capricious for the Planning Commission to make a decision *without* considering additional evidence other than that offered by the permittee. *See* SJCZO § 2-2(2)(e) (2011) ("The Appeal Authority shall upon appeal, presume that the decision applying the land use ordinance is valid and determine only whether or not the decision is arbitrary, capricious, or illegal."); UTAH CODE § 17-27a-801(3)(c)(i) ("A land use decision is arbitrary and capricious if the land use decision is not supported by substantial evidence in the record."). But that issue is not before us, and thus, we decline to consider it.

other than the permittee is granted participatory rights in this revocation hearing.

¶28  In analyzing the revocation section of the Zoning Ordinance, we take the inclusion of the permittee's participatory rights and the exclusion of any other participatory rights to be powerful evidence that the Planning Commission is only required to extend participatory rights to the permittee.

> When examining the plain language [of an ordinance], we must assume that each term included in the ordinance was used advisedly. Additionally, statutory construction presumes that the expression of one should be interpreted as the exclusion of another. Thus, we should give effect to any omission in the ordinance language by presuming that the omission is purposeful.

*Carrier v. Salt Lake Cnty.*, 2004 UT 98, ¶ 30, 104 P.3d 1208, *abrogated by Outfront Media, LLC v. Salt Lake City Corp.*, 2017 UT 74, ¶ 30, 416 P.3d 389 (citation omitted) (internal quotation marks omitted).

¶29  Just as we read the omission of participatory rights in the Zoning Ordinance as powerful evidence, so too is the omission of participatory rights in CLUDMA. We "presume that the language chosen by the Legislature is meaningful," and thus we "will not infer substantive terms into the text that are not already there. Rather, the interpretation [of a statute] must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed." *State v. Sanders*, 2019 UT 25, ¶ 25, 445 P.3d 453 (second alteration in original) (citation omitted). The legislature knows how to grant participatory rights. *See, e.g.*, UTAH CODE § 17-27a-302(1)(e)(ii) (protecting the participatory rights of participants to be heard in public hearings on contested CUP applications); *id.* § 73-31-204(1)(b)–(3) (requiring the statutory water bank board to hold a public meeting to receive comments from water users regarding any application); *id.* § 53G-7-1203(4) (requiring that school community council meetings be open to the public and prohibiting the council from closing any portion of a meeting to the public). They have not done so here.

### B. NMA Does Not Have a Protectable Due Process Interest in the Enforcement of the CUP or in Participation in the Revocation Hearing

¶30  NMA claims that it has a protectable due process interest in the "enforcement of the" CUP and "in requiring the county to allow [it] to fully participate in the revocation process." The majority of the

court of appeals held that these due process interests were granted by CLUDMA and the San Juan County Zoning Ordinance. *See N. Monticello All. LLC v. San Juan Cnty.*, 2020 UT App 79, ¶ 10, 468 P.3d 537. The concurrence, on the other hand, found that these due process interests were granted by the placement of specific mitigating conditions on the CUP. *Id.* ¶ 27 (Christiansen Forster, J., concurring). NMA urges us to affirm the court of appeals' decision on either, or both, grounds. But, for the reasons explained below, we hold that neither CLUDMA nor the Zoning Ordinance grants NMA these interests and thus do not entitle NMA to participate in the Planning Commission's revocation hearing. And we are not convinced that the specific mitigating conditions on the CUP grant NMA this interest and thus decline to affirm on those alternative grounds.

¶31 NMA claims a violation of its procedural due process rights.[11] Procedural due process claims are analyzed under a two-part test: "The first question is 'whether the [complaining party] has been deprived of a protected interest' in property or liberty. If the court finds deprivation of a protected interest, we consider whether the procedures at issue comply with due process." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 48, 299 P.3d 990 (alteration in original) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). Thus, our first question is whether NMA has been deprived of a protected interest.

¶32 Property interests have been defined as "legitimate claim[s] of entitlement to some benefit." *Petersen v. Riverton City*, 2010 UT 58, ¶ 21, 243 P.3d 1261 (internal quotation marks omitted) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)).

---

[11] Specifically, NMA cites to the due process clauses of both the Utah Constitution and the U.S. Constitution. But we have recognized that the guarantee of due process under the Utah Constitution is "substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution," *In re Worthen*, 926 P.2d 853, 876 (Utah 1996) (citing *Untermeyer v. State Tax Comm'n*, 129 P.2d 881, 885 (Utah 1942)), and NMA does not make any argument separately under the state constitution. As such, we analyze the claims under the federal constitution without a separate analysis of NMA's state constitutional claims. *See State v. Timmerman*, 2009 UT 58, ¶ 25 n.5, 218 P.3d 590; *State v. Davis*, 972 P.2d 388, 392 (Utah 1998); *State v. Munguia*, 2011 UT 5, ¶ 15 n.10, 253 P.3d 1082.

"An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'" *Hyde Park*, 226 F.3d at 1210. "Rather, a property interest exists only where 'existing rules and understandings that stem from an independent source such as state law . . . secure certain benefits and [] support claims of entitlement to those benefits.'" *Petersen*, 2010 UT 58, ¶ 22 (alterations in original) (quoting *Hyde Park Co.*, 226 F.3d at 1210). As explained further below, NMA does not have such an interest.

1. CLUDMA and the Zoning Ordinance Do Not Grant NMA a Protected Interest for Purposes of the Due Process Clause

¶33 In the present case, we are reviewing the court of appeals' decision that CLUDMA and the Zoning Ordinance grant due process rights to NMA. Namely, we are tasked with deciding whether the protected interest and due process right NMA claims arise from the statute and Zoning Ordinance. We have already explained that they do not explicitly grant a right to participate in the revocation hearing. *See supra* ¶¶ 21–28. But, there are some situations in which a statute creates a protected liberty or property interest, which may then lead to due process rights to be heard and participate in an administrative proceeding. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983); *Bd. of Pardons v. Allen*, 482 U.S. 369 (1987). Most commonly, a state might create a protected interest by enacting a statutory scheme that sets significant and substantive limits on official discretion, such that the benefit in question becomes an entitlement and not a unilateral expectation. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461–62 (1989). The U.S. Supreme Court has stated that "the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* at 461–62 (citation omitted). For example, in *Hewitt*, the Court held that when a state went "beyond simple procedural guidelines" and instead "used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed," there was no escaping the "conclusion that the State has created a protected liberty interest." 459 U.S. at 471–72.

¶34 But, in situations where government decisionmakers are granted significant discretion as to whether or not to take an action or award a benefit, courts decline to find a protected interest. *See, e.g.*, *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111 (10th Cir. 1991); *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994); *Meachum v. Fano*, 427 U.S. 215 (1976); *Connecticut Bd. of Pardons*

*v. Dumschat*, 452 U.S. 458 (1981). The U.S. Supreme Court has stated that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). The Second Circuit has explained that "[g]overnment officials . . . generally are given broad discretion in their decisions whether to undertake enforcement actions" and that "[w]here a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit. An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit." *Gagliardi*, 18 F.3d at 192 (citation omitted) (internal quotation marks omitted). And recently, our court of appeals stated that in a land use regulation case, "the entitlement analysis focuses on the degree of discretion given the decision maker." *Farley v. Utah Cnty.*, 2019 UT App 45, ¶ 25, 440 P.3d 856 (citation omitted) (internal quotation marks omitted). When a party holds only "a unilateral expectation" of a benefit or a favorable decision, such expectation is "insufficient to establish a due process claim." *Id.* ¶ 32.

¶35 The present case is more like these latter cases. The Zoning Ordinance grants the Planning Commission broad discretion in deciding whether or not to revoke or enforce a CUP, even if there has been a failure to observe a condition or requirement. Section 6-10 states that a CUP "shall be revocable by the Planning Commission at any time due to failure of the permittee to observe any condition specified or failure to observe other requirements of this Ordinance in regard to the maintenance and improvements or conduct of the use or business as approved." SJCZO § 6-10. The Zoning Ordinance requires the Planning Commission to hold a hearing before revoking a permit, *see infra* ¶ 25, and after the hearing the Commission "shall determine whether the permit should be revoked." SJCZO § 6-10. This scheme is not one that *requires* the Planning Commission to revoke, but one that *allows* them to. It places broad discretion in the Planning Commission's hands—the Commission, faced with a potential violation of a CUP, decides if it wants to potentially revoke, at which point it holds a hearing. After the hearing, it decides whether or not the permit should be revoked. There are no specific criteria set up and there is no requirement that the Planning Commission must revoke or, alternatively, enforce a permit at any

time.[12] In such a discretionary process, it cannot fairly be said that the state has created a protected interest.

¶36 Nor does NMA's procedural right to appeal create a protected interest for purposes of the due process clause. The majority of the court of appeals found that NMA had a due process right to participate in the revocation hearing that corresponded to its right to appeal. In their view, the due process right was implied from the sections of CLUDMA and the Zoning Ordinance granting NMA, as an adversely affected party, the right to appeal. 2020 UT App 79, ¶¶ 10–15. This was in error. Neither the statute nor the Zoning Ordinance grants NMA a protected interest in participating in the revocation proceeding or having the County revoke or enforce the CUP because purely procedural rights do not, by themselves, create constitutionally protected property interests.

¶37 A state does not "create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive guarantee." *Castle Rock*, 545 U.S. at 771 (Souter, J., concurring). As Justice Souter explained in *Castle Rock*, a claim to "a property interest in a state-mandated process in and of itself . . . is at odds with the rule that '[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.'" *Id.* (alteration in original) (citation omitted). "[I]n every instance of property recognized by [the Supreme] Court as calling for federal procedural protection, the property has been distinguishable from the procedural obligations imposed on state officials to protect it." *Id.* at 772. While adversely affected parties are given the opportunity to appeal the Planning Commission's decisions, this procedural opportunity is just that: procedural. It "does not give rise to an

---

[12] Of course, there may be some instances where the Planning Commission's decision not to revoke or enforce a CUP is "arbitrary, capricious, or illegal." CLUDMA and the Zoning Ordinance allow those affected by Planning Commission's decisions to appeal to the County Commission and to try and make the case that the Planning Commission's decision was arbitrary, capricious, or illegal. *See supra* ¶ 18; SJCZO § 2-2; UTAH CODE § 17-27a-703(1). For instance, they might argue that it was arbitrary and capricious not to revoke a CUP that clearly violated conditions. We do not address those issues here because they are not before us, but we note this possibility to make clear that the Planning Commission does not have absolute power, even with its broad grant of discretion.

independent interest protected by the fourteenth amendment." *Fusco v. Connecticut*, 815 F.2d 201, 205–06 (2d Cir. 1987) (holding that the appellate right of landowners and aggrieved persons to appeal planning and zoning commission decisions was "purely procedural" and did not give rise to an independent protected interest for purposes of the due process clause).

¶38 NMA also argues that CLUDMA and the Zoning Ordinance give it a right to participate in the revocation hearing because there are provisions requiring the County Commission to "respect the due process rights of each of the participants" upon appeal. UTAH CODE § 17-27a-706(2); SJCZO § 2-2(2)(f). But this is not a creation of due process rights; rather, this tasks the County Commission to respect already existing due process rights, where applicable, without creating new ones. For due process to attach, there must be a protectable interest. *See supra* ¶¶ 29–30. And for the reasons explained above, CLUDMA and the Zoning Ordinance do not grant NMA the protectable interests that it claims.

2. We Decline to Affirm on the Alternative Ground that the Placement of Specific Mitigating Conditions on the CUP Gave NMA a Protected Interest for Purposes of the Due Process Clause

¶39 Lastly, NMA argues that the placement of specific mitigating conditions on sPower's permit, aimed in part at protecting NMA members' property, gave NMA a legitimate claim of entitlement in the enforcement of the CUP and the right to participate in the revocation hearing. The majority of the court of appeals did not address this argument; instead, this argument was the basis for Judge Christiansen Forster's concurrence. *See N. Monticello All.*, 2020 UT App 79, ¶ 27 (Christiansen Forster, J., concurring). NMA urges that we may affirm the decision of the court of appeals upon this alternative ground. *See, e.g., Collins v. Sandy Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267 ("We may affirm the court of appeals' decision on any ground supported in the record."); *Scott v. Scott*, 2020 UT 54, ¶ 30, 472 P.3d 897 (noting that "[a]s an appellee," a party "had the prerogative of identifying alternative grounds for affirmance"). We decline to do so.

¶40 This is a more difficult question than whether CLUDMA and the Zoning Ordinance give rise to a protected interest. The addition of mitigating conditions on a CUP, specifically intended to protect certain property owners, may in some cases provide landowners with something more than just a "unilateral expectation" of a benefit. *See supra* ¶¶ 30–31. But we are simply not convinced that that is the case here. As noted, the Planning

Commission is given a great deal of discretion in deciding whether or not to even hold the initial hearing necessary to revoke a CUP, and after said hearing, the Planning Commission has additional discretion in deciding whether or not to revoke. *See supra* ¶¶ 33–34. Faced with such a discretionary scheme, NMA has not convinced us that a protected property interest arises from the placement of the specific conditions on the CUP. In other words, NMA has not met its burden to show that its expectation of enforcement of the CUP and participation in the revocation hearing goes beyond a "unilateral expectation" to such benefits and is instead a "legitimate claim of entitlement."[13] We thus decline to affirm the decision of the court of appeals on this alternative ground.[14]

## CONCLUSION

¶41 The court of appeals erred when it held that NMA had a due process right to participate in the revocation hearing granted by

---

[13] We do not categorically foreclose the possibility that a protected interest may arise from conditions placed on a CUP. We simply do not find that to be the case here.

[14] Our opinion does not necessarily leave NMA without a remedy. NMA may have a cause of action under CLUDMA's enforcement provision, which allows adversely affected parties to "institute: (i) injunctions, mandamus, abatement, or any other appropriate actions; or (ii) proceedings to prevent, enjoin, abate, or remove [an] unlawful building, use, or act." UTAH CODE § 17-27a-802(1)(a); *see also Culbertson v. Bd. of Cnty. Comm'rs of Salt Lake Cnty.*, 2001 UT 108, ¶¶ 27–31, 44 P.3d 642 (interpreting a prior version of CLUDMA's enforcement provision to allow plaintiffs to bring an action in district court to enforce compliance with a CUP), *overruled on other grounds by Madsen v. JP Morgan Chase Bank, N.A.*, 2012 UT 51, 296 P.3d 671. Additionally, Utah Code section 78B-6-1101 grants NMA's members a cause of action to sue sPower for interference with their use and enjoyment of their property under a claim of private nuisance. *See Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 23, 190 P.3d 1 (holding that authorization from a municipality does not defeat a private nuisance claim). Lastly, NMA had the right to appeal the Planning Commission's decision not to revoke the CUP, *see supra* ¶¶ 18–19, and could argue to the County Commission either that its exclusion from the hearing was arbitrary and capricious or that the Planning Commission's decision not to revoke was arbitrary and capricious in light of the alleged violations. *See* SJCZO § 2-2(2)(e).

Opinion for Voting

CLUDMA and the San Juan County Zoning Ordinance. We reverse its decision and remand the case to the court of appeals for further consideration of any remaining issues properly raised before it.

————————