2005 UT App 565

**UINTAH MOUNTAIN RTC, L.L.C.; D. Brad Hancock; John D. Hancock; Tyson B. Hancock; and Beau D. Hancock, Plaintiffs and Appellants,**

v.

**DUCHESNE COUNTY, Defendant and Appellee.**

No. 20050053–CA.

Court of Appeals of Utah.

Dec. 30, 2005.

---

Eric G. Easterly, Park City, for Appellants.

Roland Uresk, Duchesne, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and GREENWOOD, J.

## OPINION

GREENWOOD, Judge:

¶1 Plaintiffs Uintah Mountain RTC, L.L.C., D. Brad Hancock, John D. Hancock, Tyson B. Hancock, and Beau D. Hancock appeal the trial court's ruling affirming the Duchesne County Commission's (the County) decision denying Plaintiffs' application for a conditional use permit to operate a residential treatment facility in Duchesne County, Utah. We affirm in part and reverse in part.

## BACKGROUND

¶2 Plaintiffs D. Brad Hancock, John D. Hancock, Tyson B. Hancock, and Beau D. Hancock own a small family farm (the Hancock Farm) located in Duchesne County, Utah. In 2001, the Hancock family purchased a five-acre parcel of land (the Hancock Parcel) immediately adjacent to the Hancock Farm. Both the Hancock Farm and the Hancock Parcel are zoned A–5, which is an agricultural-residential zoning category with a five-acre minimum lot size.

¶3 Plaintiffs planned to establish a residential treatment center (Uintah RTC) on the Hancock Parcel, and formed Plaintiff Uintah Mountain RTC, L.L.C. for the purpose of operating Uintah RTC. Plaintiffs envisioned that Uintah RTC would house and treat young men between the ages of twelve and seventeen for low self-esteem, obesity, depression, attention deficit hyperactivity disorder, lackluster academic performance, and breakdowns in familial relationships, and also counsel those who had experimented with drugs or alcohol. Uintah RTC would not accept applicants with a history of violence or sexual offenses, or with any "significant criminal background." Initially, Uintah RTC was to be housed in an existing structure on the Hancock Parcel, which Plaintiff D. Brad Hancock was remodeling.

¶4 Plaintiff John D. Hancock conceived the idea of operating Uintah RTC after working as a counselor at a nearby residential treatment center, Cedar Ridge RTC. Cedar Ridge RTC is located in an area of Duchesne County also zoned A–5, and was granted a conditional use permit in 1997 to operate a residential treatment center.

¶5 In 2003, Plaintiffs submitted an application for a conditional use permit to the Duchesne County Planning Commission (the Planning Commission), seeking approval to operate Uintah RTC on the Hancock Parcel. The Duchesne County Code allows a "group home" [1] in an A–5 zone as a conditional use. In order to obtain a conditional use permit for a group home, an applicant must complete a detailed application, see Duchesne County Code § 17.40.020, and the Planning Commission must make certain findings in accordance with sections 17.52.050 and 17.52.053 of the Duchesne County Code.[2] See id. §§ 17.52.050, .053.

---

1. It is undisputed that residential treatment facilities are considered "group homes" under the Duchesne County Code.

2. Section 17.52.050 permits the Planning Commission to grant a conditional use permit if it finds:

 (1) The proposed use at the proposed location will not be unduly detrimental or injurious to property or improvements in the vicinity and will not be detrimental to the public health, safety or general welfare.
 (2) The proposed use will be located and conducted in compliance with the goals and policies of the Duchesne County General Plan and the purposes of this ordinance.
 (3) That the property on which the use, building or other structure is proposed is of adequate size and dimensions to permit the conduct of the use in such a manner that will not

be materially detrimental to adjoining or surrounding properties.
 Duchesne County Code § 17.52.050.
 Section 17.52.053 the Duchesne County Code requires the Planning Commission to address the following "special minimum conditions" for a group home:
 (1) The location of the proposed use is compatible to other land uses in the general neighborhood.
 (2) The site is of sufficient size to accommodate the proposed use together with all yards, open spaces, walls and fences, parking and loading facilities, landscaping as required by the ordinance.
 (3) The site shall be served by streets of sufficient capacity to carry the traffic generated by the proposed use.
 (4) The proposed use, if it complies with all conditions of which approval is made contingent, will not adversely affect other property in

¶ 6 The Planning Commission held public hearings regarding Plaintiffs' application, at which time Plaintiffs presented supporting documentary and testimonial evidence. A number of individuals who opposed Plaintiffs' application also attended the hearings, providing letters, news stories, and testimony in support of their position.

¶ 7 Based on the evidence presented, the Planning Commission determined, in compliance with section 17.52.050 of the Duchesne County Code, that (a) Uintah RTC would not be unduly detrimental or injurious to property or improvements in the vicinity and would not be detrimental to the public health, safety, or general welfare; (b) Uintah RTC would be located and conducted in compliance with the goals and policies of the Duchesne County General Plan and purposes of the zoning ordinance; and (c) the Hancock Parcel and the existing structure on the Hancock Parcel were of adequate size and dimensions to permit the conduct of Uintah RTC in a manner that would not be materially detrimental to adjoining or surrounding properties.

¶ 8 Additionally, the Planning Commission determined that Plaintiffs had met the special minimum conditions of section 17.52.053 of the Duchesne County Code, finding that (a) the location of Uintah RTC would be compatible with other land uses in the general neighborhood; (b) the site of Uintah RTC would be of sufficient size to accommodate the facility; (c) the site of Uintah RTC would be served by streets of sufficient capacity to carry the traffic expected to be generated by the facility; and (d) Uintah RTC, if otherwise in compliance with the conditional use permit, would not adversely affect other property in the vicinity or the general welfare of the county.

¶ 9 At the conclusion of the hearings, the Planning Commission unanimously approved the Plaintiffs' application for a conditional use permit, on the conditions that Plaintiffs (a) limit the number of young men residing in the facility at any one time to ten or, if required by the State of Utah, a number less than ten; (b) install an alarm system;

the vicinity or the general welfare of the county.

(c) conduct monthly public relations meetings with neighbors; (d) provide a definition of "significant criminal background"; (e) show proof of liability insurance; and (f) comply with all other rules and regulations, including those contained within [Plaintiffs'] original application as well as applicable state and federal laws.

¶ 10 Subsequently, this decision was appealed to the County by neighbors who opposed the conditional use permit. Plaintiffs cross-appealed the Planning Commission's decision limiting the number of residents at Uintah RTC to ten.

¶ 11 The County affirmed the ten-resident limit on Uintah RTC, finding that Plaintiffs' application was incomplete, as "[n]o diagram was submitted for any number greater than ten," and "[n]o other evidence was presented to support a larger facility to accommodate 16 or 50 young men." The County also found that Plaintiffs presented "no evidence that the Planning Commission's limitation was arbitrary or capricious."

¶ 12 Regarding the neighbors' appeal, the County first denied Plaintiffs' request to dismiss the appeal on the basis that it was the product of "public clamor"—an insufficient basis for denying a conditional use permit. Turning to the merits of the appeal, the County determined:

> The Planning Commission's decision was not supported by the evidence, ... there was insufficient evidence provided to address the issues of safety, traffic, and compatibility of the use to justify making the findings necessary to grant the conditional use. The area is clearly residential and agricultural, and from all that was presented we find that [Plaintiffs'] proposals are a commercial venture and not compatible with the area.... We agree [with the Planning Commission] that a single structure on five acres could be compatible to the area, but we disagree that this project could be compatible. It is clear that a single structure on five acres is inadequate for [Plaintiffs'] needs and that a larger project will be needed to be a viable ven-

*Id.* § 17.52.053.

ture. There has been nothing presented ... to convince us that [Uintah RTC] is a viable project, nor could it be a compatible use in this area. We, therefore, overturn the decision of the [P]lanning [C]ommission and deny the conditional use permit

. . . .

¶ 13 Subsequently, Plaintiffs appealed to the district court, arguing that (1) the County's denial of the conditional use permit was illegal under the federal Fair Housing Act (FHA), 42 U.S.C.A. §§ 3601–3631 (West 2003), and the Utah Fair Housing Act (Utah FHA), §§ 57–21–1 to –14 (2000); (2) the Planning Commission and the County acted arbitrarily and capriciously in limiting Uintah RTC to ten residents; and (3) the County acted arbitrarily and capriciously in denying the conditional use permit in its entirety.

¶ 14 The district court affirmed. First, it concluded that the denial was not illegal under the FHA because there was no record evidence that "the decision to deny the permit was based on the potential residents' lack of familial status," and that the FHA "was not intended to apply to this situation."

¶ 15 Second, the district court determined that the decision to limit Uintah RTC to ten residents was not arbitrary and capricious because Plaintiffs' application was inadequate, as they failed to submit "any diagrams or plans ... on how to house" more than ten residents. Additionally, the district court found that while the County's decision indicated that a ten-youth facility could be compatible with the area, Plaintiffs had maintained that Uintah RTC needed to house sixteen residents to be economically viable.

The court also found that "in order to serve more youth, there would need to be additional structures/housing, which would then not be compatible with the single-family use of the area."

¶ 16 The district court concluded that the denial of the conditional use permit in its entirety was not arbitrary and capricious because the decision was supported by substantial evidence. Further, contrary to Plaintiffs' argument, the court held that the denial was not based on mere public clamor, and referred to evidence received by the County

> in the form of a letter from Mr. Dale Cameron regarding the effect the treatment center would have on the surrounding properties. There was evidence presented to [the County] regarding safety concerns for these types of facilities. There was evidence presented regarding a nearby facility and some incidents that took place at that facility. It cannot be said from the evidence that the proposed facility would not be detrimental to the surrounding property. Therefore, the evidence supports [the County's] denial of the conditional use permit in its entirety.

Plaintiffs appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 17 Plaintiffs argue that (1) the County acted arbitrarily and capriciously in denying their application for a conditional use permit to operate a residential treatment center and (2) the County acted illegally in limiting the residential treatment center to ten residents.[3]

---

**3.** Plaintiffs also appeal the district court's ruling that the County did not violate the FHA, see 42 U.S.C.A. §§ 3601–3631 (West 2003), or the Utah FHA, see Utah Code Ann. §§ 57–21–1 to –14 (2000), by denying Plaintiffs' application for a conditional use permit to operate Uintah RTC. However, we do not consider this issue because it is inadequately briefed. See State v. Thomas, 961 P.2d 299, 304 (Utah 1998) (refusing to address arguments that are inadequately briefed). Although Plaintiffs cursorily claim that the County's decision violates the Utah FHA, they do not separately brief a claim under the Utah FHA or cite any authority interpreting the Utah FHA. Regarding their claim under the FHA, Plaintiffs fail to identify which provision of the FHA the County allegedly violated. The sole provision referenced in their brief is section 3602(k), which

defines "familial status." See 42 U.S.C.A. § 3602(k). However, section 3602(k) is definitional only; the operative provisions of the FHA are contained in section 3604. See id. § 3604. And, Plaintiffs do not indicate which provision of section 3604 they are asserting the County violated. Moreover, while Plaintiffs cite cases to support their position that the County discriminated against them based on "familial status," which is prohibited under section 3604(a)-(e), see id. § 3604(a)-(e), these cases only analyze claims brought under section 3604(f), which prohibits discrimination on the basis of handicap. See id. § 3604(f); Oxford House, Inc. v. Town of Babylon, 819 F.Supp. 1179, 1182 (E.D.N.Y.1993); Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 458–61 (D.N.J.1992); United States

¶ 18 "Since the district court's review of the [County's] decision was limited to a review of the [County's] record, we do not accord any particular deference to the district court's decision. Instead, we review the [County's] decision as if the appeal had come directly from the agency." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 603 (Utah Ct.App.1995) (footnotes omitted). Accordingly, the standard by which we review the County's decision "is the same standard established in the Utah Code for the district court's review." *Id.*

■ ¶ 19 When reviewing a county's land use decision, "[t]he district court's review is limited to a determination of whether the ... decision is arbitrary, capricious, or illegal." Utah Code Ann. § 17–27–708(2)(a) (2001). A local government's "'land use decision [concerning the granting or denial of a conditional use permit] is arbitrary and capricious [only] if it is not supported by substantial evidence.'" *Ralph L. Wadsworth Constr., Inc. v. West Jordan City,* 2000 UT App 49,¶ 9, 999 P.2d 1240 (alterations in original) (quoting *Springville Citizens v. City of Springville,* 1999 UT 25,¶ 24, 979 P.2d 332). Substantial evidence is "'that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion.'" *Bradley v. Payson City Corp.,* 2003 UT 16, ¶ 15, 70 P.3d 47 (citation omitted). "A determination of illegality requires a determination that the ... decision violates a statute, ordinance, or existing law." Utah Code Ann. § 17–27–708(2)(b).

## ANALYSIS

### I. Whether the County's Decision was Arbitrary and Capricious

¶ 20 Plaintiffs argue that the County's denial of their application for a conditional use permit to operate a residential treatment facility of any size was arbitrary and capricious because it was not supported by substantial evidence. Specifically, Plaintiffs attack the County's findings under the Duchesne County Code that Uintah RTC (a) would not be "compatible to other land uses in the general neighborhood," Duchesne County Code § 17.52.053(1); (b) would not "be served by streets of sufficient capacity to carry the traffic generated" by the facility, *id.* § 17.52.053(3); and (c) would be detrimental to public safety and surrounding property, in violation of sections 17.52.050(1) and 17.52.053(4) of the Duchesne County Code. *See id.* §§ 17.52.050(1), .053(4).

¶ 21 We address these issues in turn, but first note a problem underlying each of them. It appears that the County upheld the Planning Commission's limitation of ten residents for Uintah RTC. However, it then examined the propriety of Plaintiffs' application for a conditional use permit assuming Plaintiffs would eventually desire a facility with a capacity for more than ten residents. This assumption was based on testimony of Plaintiffs that Uintah RTC would need between sixteen and fifty residents to be financially feasible. Indeed, the County stated: "It is clear that a single structure on five acres is inadequate for [Plaintiffs'] needs and that a larger project will be needed to be a viable venture." To the extent that the County's decision was based upon economic viability, it was improper. The Duchesne County Code does not include economic viability as a criterion for granting or denying a conditional use permit to operate a group home. Furthermore, the Duchesne County Code does not permit the County to deny an otherwise sufficient application for a conditional use permit based on the mere speculation that an additional, potentially expanded conditional use permit may be sought by Plaintiffs sometime in the future.

### A. Compatible Use

■ ¶ 22 Plaintiffs first argue that the County's determination that Uintah RTC

---

*v. Audubon,* 797 F.Supp. 353, 357–60 (D.N.J. 1991); *A.F.A.P.S. v. Regulations & Permits Admin.,* 740 F.Supp. 95, 102 (D.P.R.1990). As such, these cases are inapposite. Therefore, Plaintiffs' claim is inadequately briefed because it impermissibly places upon this court the burden of conducting research to determine which provision of section 3604 the County allegedly violated, and the burden of ascertaining if and how the County violated the FHA. *See Thomas,* 961 P.2d at 305 (stating that an appellate court is not "a depository in which the appealing party may dump the burden of argument and research." (quotations and citations omitted)).

would not be compatible with other uses in the general neighborhood was not supported by substantial evidence. We agree.

¶ 23 Section 17.52.053(1) of the Duchesne County Code requires, as a "special minimum condition" for a group home, that "[t]he location of the proposed use [be] compatible to other land uses in the general neighborhood." Duchesne County Code § 17.52.053(1). In support of its conclusion that a residential treatment center would not be a compatible use, the County relied on "the submissions of the neighbors that the use in this area is single family dwellings on large lots with much open space." Accordingly, the County appears to have determined that Uintah RTC would not be compatible with other land uses in the general neighborhood because it is a commercial venture and "[t]his facility will need fences, parking, and attendant sheds and structures to house so many young men."

¶ 24 This conclusion is somewhat confusing given that earlier in its decision the County indicated that it agreed with the Planning Commission that a residential treatment center consisting of a single family residence on five acres would be in "keeping with the character of the neighborhood." Indeed, consideration of the structures that Uintah RTC may require seems more applicable to determining whether "the site is of sufficient size" under section 17.52.053(2), rather than determining whether it is a compatible use under section 17.52.053(1). *See* Duchesne County Code 17.52.053(2) (requiring "the site [be] of sufficient size to accommodate the proposed use together with all yards, open spaces, walls and fences, parking and loading facilities, [and] landscaping"). Considering this prong, the County found "[t]here is sufficient evidence on the record to support condition (2) regarding sufficient size."

¶ 25 We conclude, however, that the County's finding that Uintah RTC would not be a compatible use is not supported by substantial evidence. To the contrary, the evidence shows that in 1997 the County granted a conditional use permit to another facility, Cedar Ridge RTC, to operate a much larger residential treatment center in an area of Duchesne County also zoned A–5. Given the similarities in both neighborhood and use, it is unlikely that Cedar Ridge RTC would be a compatible use while Uintah RTC would not. *See Ralph L. Wadsworth Constr., Inc. v. West Jordan City*, 2000 UT App 49, ¶ 18, 999 P.2d 1240 (rejecting, as arbitrary and capricious, the city council's finding that the "appellants' proposed storage is much different than that of neighboring properties" because "the evidence shows that there are several other parcels near appellants' property which have outdoor storage areas similar to that proposed by appellants." (quotations omitted)). Therefore, the County's conclusion that Uintah RTC would not be a compatible use is not supported by substantial evidence.

### B. Traffic

¶ 26 Plaintiffs next argue that the County's conclusion that Uintah RTC did not adequately address the issue of traffic was not supported by substantial evidence. We agree.

██ ¶ 27 Section 17.52.053(3) of the Duchesne County Code mandates that "[t]he site shall be served by streets of sufficient capacity to carry the traffic generated by the proposed use." Duchesne County Code § 17.52.053(3). Despite a thorough review of the record, we cannot find any evidence that supports the County's finding that traffic generated by the facility would be a problem. In fact, there is ample evidence in the record indicating that traffic for a ten-person facility would not be a problem. Furthermore, the County's decision is inconsistent on this issue. For example, at one point the decision notes that "[t]here is sufficient evidence in the record to support condition ... (3)[,] regarding streets sufficient to carry the traffic generated by ... a single residence structure on five acres with a maximum of 10 young men." However, the decision later concludes "there was insufficient evidence provided to address the issue[ ] of ... traffic." As Plaintiffs argue, it appears that the County's concerns with the traffic likely to result from a facility of more than ten persons generated its finding regarding traffic problems. Therefore, the County's decision regarding traffic was not supported by substantial evidence.

## C. Public Safety and Welfare

¶ 28 Finally, Plaintiffs argue that the County's concern about safety aspects of the proposed use and its decision that Uintah RTC would adversely affect other property in the vicinity were not supported by substantial evidence. Section 17.52.050(1) requires that "[t]he proposed use at the proposed location will not be unduly detrimental or injurious to the property ... in the vicinity ... [or] to the public health, safety[,] or general welfare." Duchesne County Code § 17.52.050(1). Additionally, section 17.52.053(4) requires that "[t]he proposed use ... will not adversely affect other property in the vicinity or the general welfare of the county." *Id.* § 17.52.053(4). Specifically, Plaintiffs claim that while there is evidence in the record to support the County's findings pursuant to these provisions, this evidence is nothing more than "public clamor," which is an insufficient justification to deny a conditional use permit. Again, we agree.

¶ 29 We encountered a similar situation in *Davis County v. Clearfield City*, 756 P.2d 704 (Utah Ct.App.1988). In that case the applicants sought a conditional use permit for a substance abuse residential program. *See id.* at 705. A public hearing was held, where a number of citizens attended and raised concerns about parking, increased crime rates, and reduction of property values in the vicinity. *See id.* The application was denied by both the city planning commission and the city council (collectively, the city). *See id.* at 704–05. Subsequently, the applicants filed suit. Based upon its review of the record, and the lack of any credible evidence in support of the city's articulated reasons for denying the application, the trial court found that the city's decision was based on "public clamor." *Id.* at 711. Elaborating, the trial court explained:

> "Indeed, there is almost uniform public clamor when any mental health facility, halfway house, jail or prison is proposed. The public realizes the need for such facilities, but they should always be located somewhere else.... Citizen opposition is a consideration which must be weighed, but cannot be the sole basis for the decision to deny."

*Id.* at 712 (alteration in original) (quoting the trial court). Thereafter, the trial court authorized a writ of mandamus requiring the city to issue the conditional use permit. *See id.* at 706. The city appealed.

¶ 30 We affirmed on appeal, first noting the general rule that "while there is no impropriety in the solicitation of or reliance on the advice of neighboring landowners, 'the consent of neighboring landowners may not be made a criterion for the issuance or denial [of] a conditional use permit.'" *Id.* at 712 (alteration in original) (quoting *Thurston v. Cache County*, 626 P.2d 440, 445 (Utah 1981)). We went on to conclude that "[w]hile the reasons given by [the city] for denying the permit might be legally sufficient if supported, ... the offered reasons are without factual basis in the record.... [T]he real reason for the action, 'public clamor,' is not an adequate legal basis for the city's decision." *Id.*

¶ 31 In a later case, *Ralph L. Wadsworth Construction, Inc. v. West Jordan City*, 2000 UT App 49, 999 P.2d 1240, the applicants sought a conditional use permit for outdoor storage of construction equipment. *See id.* at ¶ 1. Several public meetings were held regarding the application, at which neighbors expressed concerns that open storage would "induce rodent traffic" and create dust problems. *See id.* at ¶ 3. The application was denied by the West Jordan Planning and Zoning Commission, and the denial was upheld by the West Jordan City Council and the trial court. *See id.* at ¶¶ 3–7. This court reversed on appeal, observing:

> In denying appellants' application, the City Council relied on its finding that "[t]he city has made a significant investment in bringing Dannon [Foods] to the area and ... [o]utdoor storage is detrimental to the area ... and injurious to the goals of the city." However, the only evidence in the record supporting this finding are the concerns expressed by neighboring landowners. The record does not reveal whether the Commission's staff actually investigated the concerns raised at the public hearing or why they concluded that outdoor storage on appellants' property— which is located in an M–1 zone [permit-

ting light manufacturing and construction]—would be adverse to the city's goals. Because the decision to deny an application for a conditional use permit may not be based solely on adverse public comment, we conclude this finding is insufficient to support the City Council's denial of appellants' application.

*Id.* at ¶ 17 (first, third, fourth, and fifth alterations in original).

¶ 32 In the instant case, the County determined that "there was insufficient evidence provided to address the issue[ ] of safety ... to grant the conditional use." In making this conclusion, the County relied on its finding that

> the neighbors have also raised the issues of safety. No matter how you characterize it this is a facility for troubled youth, and troubled youth have their problems. There is evidence in the record that these types of facilities do have escapees and sometimes escapees cause injury to persons and property. We see no evidence in the record that these issues have been addressed in a manner that will be compatible with the permitted uses in this area.

This finding is the product of public clamor. The record before the County concerning this issue consists of submissions and comments from neighboring landowners, including letters raising safety concerns and news stories of other similar residential treatment centers that did have safety issues. However, there is no record evidence detailing actual safety issues with Uintah RTC. To the contrary, there are numerous safety requirements with which Uintah RTC must comply to obtain a license to operate a group home. In addition, proposed residents would not have histories of violence or significant criminal backgrounds, and the conditional use permit granted by the Planning Commission required Plaintiffs to carry sufficient liability insurance to cover damages caused by Uin-

tah RTC. Moreover, it is undisputed that the site factors for Uintah RTC regarding safety (utilities, medical and law enforcement response time, fire protection, distance to the hospital) are either identical to or more favorable than the same site factors for Cedar Ridge RTC. Therefore, the County's decision to deny Plaintiffs' application for a conditional use permit for a ten-person residential treatment center was arbitrary and capricious because it was impermissibly "based solely on adverse public comment." [4] *Id.*

## II. Whether the County's Decision Limiting Uintah RTC to Ten Students was Illegal

■ ¶ 33 Plaintiffs argue that the County's decision limiting Uintah RTC to ten residents was illegal because it does not further "some legitimate public need," and therefore should be considered "a taking of property in violation of the [United States] Constitution's Fifth and Fourteenth Amendments." We disagree.

¶ 34 It is clear from the County's decision that Uintah RTC was limited to ten residents because Plaintiffs' application provided insufficient information and plans detailing how they intended to house more than ten residents. The County stated it had

> concerns about the application being incomplete.... [T]he Duchesne County Code specifically requires a detailed written description of the anticipated ages and total number of occupants of the facility, together with a diagram of the facility including all separate rooms and the intended use of each room. No diagram was submitted for any number greater than ten (10).... [T]he Planning Commission granted the conditional use permit based on what they had in front of them at the time, and what [Plaintiffs] stated was the

4. Although not based on public clamor, the record evidence supporting the County's determination that Uintah RTC would have an adverse effect on neighboring properties is similarly unpersuasive. The trial court identified a letter from Dale Cameron, a real estate appraiser, indicating a possible decrease in market values of surrounding properties, as sufficient evidence to support the County's decision on this factor. However, the County does not cite this letter in its decision. Moreover, this letter is of questionable probative value, given that Mr. Cameron admits that his conclusion is the product of speculation and that "[a]dditional research of this issue is needed."

maximum number of young men that could be housed in the existing structure.

(Quotations omitted.)

¶ 35 On appeal, Plaintiffs have not claimed that they ever submitted a completed application to operate a residential treatment center for more than ten residents. In order to determine whether an imposed condition or regulation "go[es] too far in burdening property" so as to run afoul of the constitution, the landowner must first follow " 'reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property.... [U]ntil these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established.' " *Arnell v. Salt Lake County Bd. of Adjustment,* 2005 UT App 165, ¶ 19, 112 P.3d 1214 (quoting *Palazzolo v. Rhode Island,* 533 U.S. 606, 620–21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citation omitted)). Accordingly, because Plaintiffs' application was incomplete, the County did not act illegally in limiting the facility to ten residents, as described in Plaintiffs' application.

## CONCLUSION

¶ 36 In sum, the County acted arbitrarily and capriciously in overturning the Planning Commission and denying Plaintiffs' conditional use permit in its entirety. However, the County did not act illegally in limiting Uintah RTC to ten residents. Accordingly, we reverse the County's decision denying the conditional use permit in its entirety and affirm the County's decision to limit Plaintiffs' conditional use permit to ten residents. We reinstate Plaintiffs' conditional use permit, as granted, with all the conditions imposed by the Planning Commission.

¶ 37 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.