# 2023 UT App 18

## THE UTAH COURT OF APPEALS

NORTHERN MONTICELLO ALLIANCE LLC,
Appellant,
*v.*
SAN JUAN COUNTY, SAN JUAN COUNTY COMMISSION, SUSTAINABLE
POWER GROUP LLC, AND LATIGO WIND PARK LLC,
Appellees.

Opinion
No. 20180225-CA
Filed February 16, 2023

Seventh District Court, Monticello Department
The Honorable Lyle R. Anderson
No. 170700006

J. Craig Smith, Jennie B. Garner, and Jay L. Springer,
Attorneys for Appellant

Barton H. Kunz II, Attorney for Appellees San Juan
County and San Juan County Commission

Paul W. Shakespear, Elizabeth M. Brereton, and
Annika L. Jones, Attorneys for Appellees Sustainable
Power Group LLC and Latigo Wind Park LLC

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M.
CHRISTIANSEN FORSTER concurred.

MORTENSEN, Judge:

¶1 We again consider the appeal from Northern Monticello Alliance LLC (NMA) of the district court's grant of summary judgment in favor of Appellees. We conclude that the district court erred in deciding that the decision under review was supported by substantial evidence, and we reverse. The San Juan County Zoning and Planning Commission (the Planning

Commission), which originally decided against revoking the conditional use permit at issue, was the only body authorized to accept evidence and make factual findings. It failed to produce written findings sufficient for appellate review, so its decision was unsupported by substantial evidence and was, therefore, arbitrary and capricious. Thus, even though this case has since involved a series of appeals that our supreme court aptly called "curiously complex," *Northern Monticello All., LLC v. San Juan County*, 2022 UT 10, ¶ 1, 506 P.3d 593, this initial fatal flaw has rendered subsequent decisions similarly arbitrary and capricious.

BACKGROUND[1]

¶2      In 2012, the Planning Commission issued a conditional use permit (CUP) authorizing construction of a wind farm to Wasatch Wind Intermountain LLC. *Northern Monticello All., LLC v. San Juan County*, 2022 UT 10, ¶ 3, 506 P.3d 593. Soon after, the Planning Commission amended the CUP at a public hearing. *Id.* While no written document memorialized the amended terms, the mitigation conditions "'gleaned from the minutes and transcript' of the public hearing," *id.* ¶ 3 n.3, required the CUP holder to "incorporate as much flicker, light, sound, mitigation as possible, and to meet all industry standards of those challenges," *id*. ¶ 3. It also "reiterat[ed] that all and any new land purchase lease deals be in writing for any contiguous and affected landowners" and that "[a]ny mitigation and standards and conditions of this CUP must be met by any and all project development people, be they owners now or in the future, and all of these be met at the time of

---

1. NMA appeals the district court's grant of summary judgment to Appellees. Accordingly, we recite the facts in the light most favorable to NMA, the nonmoving party. *Judge v. Saltz Plastic Surgery, PC*, 2016 UT 7, ¶ 3 n.1, 367 P.3d 1006; *see also Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 7, 416 P.3d 1148.

building permit issuance."[2] *Id.* Later, Wasatch Wind sold the wind park to Sustainable Power Group LLC (sPower).[3] *Id.* ¶ 3.

¶3    In August 2015, NMA complained to the Planning Commission that sPower was violating the CUP. *Id.* ¶ 4. The Planning Commission voted to hold a hearing to consider revocation. *Id.* NMA attended the hearing, but only sPower was permitted to present evidence. *Id.* The minutes of the meeting indicate, "Studies were done relating to sound, flicker, and light. Thresholds were determined and affected lands were indicated. Mitigation for lands affected were determined and compensation amounts decided." The Planning Commission voted to "table a decision on the issue until any other pertinent information is reviewed."

¶4    At a follow-up meeting five days later, the Planning Commission voted not to revoke the CUP. The Planning Commission did not produce any written findings. The minutes from the meeting note, "The other issue [up for vote was] whether or not any mitigation for sound, light, and flicker had taken place. This is a more subjective issue and not black and white. It was determined that mitigation had taken place as much as possible at this time."

---

2. The Utah Supreme Court rejected NMA's assertion that the amended CUP also required the holder to purchase NMA property or pay mitigation payments, finding that this claim was unsupported by the record. *See Northern Monticello All., LLC v. San Juan County*, 2022 UT 10, ¶ 3 n.4, 506 P.3d 593.

3. Technically, the CUP was issued to Latigo Wind Park, which is now a wholly owned subsidiary of sPower. *Id.* ¶ 4 n.5. We refer to Latigo Wind Park collectively with Sustainable Power Group as sPower.

¶5      NMA appealed this decision to the San Juan County Commission (the County Commission). *Id.* ¶ 5. The Planning Commission provided a written brief to the County Commission stating that it had held the two meetings and "decided by unanimous vote that as much mitigation as possible had occurred under the conditions it set for the project in 2012," referencing the minutes of the meetings. The brief did not include any findings of fact or conclusions of law.

¶6      The County Commission held a hearing and issued a written decision (Written Decision) reversing the decision and remanding the matter to the Planning Commission, stating that there was insufficient evidence that sPower had satisfied the conditions of the CUP. *Id.* The next day, sPower sent a letter to the County Commission indicating that sPower would suffer damages of more than one hundred million dollars if the County Commission did not swiftly reconsider its decision. sPower did not send NMA a copy of this letter. *Id.* The County Commission held a closed meeting to consider the letter and issued an amendment to its written decision (Amended Decision) reversing course and upholding the Planning Commission's decision not to revoke the CUP. *Id.* The County Commission indicated that it had, in fact, received evidence from sPower prior to issuing its Written Decision that it had inadvertently failed to consider—evidence that had been purportedly presented to the Planning Commission.[4]

---

4. In its original Written Decision, the County Commission stated that it had "been presented with no evidence in this appeal that [sPower] has worked to mitigate sound, light, and flicker other than [sPower's] representation that it has done studies and mitigated effects that exceeded the thresholds set. [Is this truly all the evidence there is in the record on appeal?]." (Final brackets in original.) Then in its Amended Decision, the County Commission

(continued…)

¶7 NMA appealed the County Commission's Amended Decision to the district court (*NMA I*). *Id.* ¶ 6. The district court concluded that the Amended Decision was supported by substantial evidence but remanded the case to the County Commission to correct due process violations by giving NMA a chance to be heard and respond to sPower's letter. *Id.* The County Commission heard from both NMA and sPower on remand. *Id.* In its subsequent decision (Remand Decision), the County Commission again upheld the Planning Commission's decision not to revoke the CUP. *Id.*

¶8 NMA next appealed the County Commission's Remand Decision to the district court (this case—*NMA II*). *Id.* ¶ 7. Both parties moved for summary judgment, and the district court granted the County's motion. *Id.* The district court found that the due process violations it had earlier identified had been remedied. *Id.* It also concluded that its finding on substantial evidence in *NMA I* still applied and thus the County Commission's decision to uphold the Planning Commission's decision against revocation was supported by substantial evidence. *Id.*

¶9 NMA then appealed to this court. *Northern Monticello All. LLC v. San Juan County*, 2020 UT App 79, 468 P.3d 537, *rev'd*, 2022 UT 10. We reversed the grant of summary judgment and remanded to the district court based on our determination that

---

stated, "Upon further review of the record we conclude that this statement was in error. In fact, sPower gave us each two three-ring binders of information it had provided to the Planning Commission." Similarly, the County Commission made its decision on remand "[i]n reliance on those documents," though it cited "different recollections and disagreement" about when the documents were provided to it. NMA alleges that some evidence presented to the County Commission, and which it relied on, was new evidence not presented to the Planning Commission. We discuss this issue further below, *see infra* note 9.

NMA members had due process rights that had been violated. *Id.* ¶ 20. Our majority opinion held that these due process rights flowed from the relevant statutes,[5] *id.* ¶ 17, while Judge Christiansen Forster concurred in the result but concluded that the due process rights derived from a protectable property interest in enforcement of the CUP's mitigation conditions, *id.* ¶¶ 21, 27 (Christiansen Forster, J., concurring).

¶10 The Utah Supreme Court then granted certiorari and ultimately reversed. *Northern Monticello All.*, 2022 UT 10. The court held that NMA did not have a right to present evidence in the Planning Commission's revocation hearing.[6] *Id.* ¶ 17. The

---

5. These statutes include the County Land Use, Development, and Management Act (CLUDMA), *see generally* Utah Code §§ 17-27a-101 to -1104, and the relevant sections of the San Juan County Zoning Ordinance, *see generally* San Juan County, Utah, Zoning Ordinance (2011), https://sanjuancounty.org/sites/default/files/fileattachments/planning/page/3381/zoningordinance092011.pdf [https://perma.cc/M3RX-CDJ9].

6. The court also held that NMA had a right to appeal and rejected Appellees' argument that the decision against revocation was not "administering or interpreting" a land use ordinance. *See Northern Monticello All.*, 2022 UT 10, ¶¶ 18–20 ("The decision was administering the section of the [San Juan County] Zoning Ordinance regarding revocation of CUPs."). Appellees make a similar argument here, asserting lack of subject matter jurisdiction through a Motion for Summary Disposition. They note that Utah Code section 17-27a-707(4) restricts appeals to "[o]nly those decisions in which a land use authority has applied a land use ordinance to a particular application, person, or parcel" and claim that the land use authority has not "applied" an ordinance in deciding against revocation. *See* Utah Code § 17-27a-707(4) (2015). We disagree. Applying a land use ordinance includes exercising

(continued…)

court reached its conclusion by reasoning that "the Utah Code, the San Juan County Zoning Ordinance[,] . . . [and] the conditions in the CUP itself" do not "provide NMA with such a right, nor do they create a protected interest in the enforcement of the CUP." *Id.* ¶ 2. The court remanded the case to this court "for further consideration of any remaining issues properly raised before it." *Id.* ¶ 41. The supreme court's decision left unresolved the questions of whether the district court erred in (1) not ruling that the County Commission's Remand Decision was arbitrary and capricious if it was not supported by substantial evidence due to the Planning Commission's failure to issue written findings and (2) holding that the County Commission was authorized to reconsider its own earlier decision.

ISSUE AND STANDARD OF REVIEW

¶11 NMA argues that the district court erred in granting summary judgment to Appellees. "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions." *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102 (cleaned up). And as we ultimately evaluate an administrative decision, we "afford no deference to the intermediate court's decision and apply the statutorily defined standard to determine whether the court

---

the authorized ability to decide on revocation of a CUP—whether the land use authority ultimately revokes or not. Specifically, San Juan County Zoning Ordinance section 6-10 authorizes revocation and describes the revocation hearing process. *See* San Juan County, Utah, Zoning Ordinance § 6-10 (2011). The Planning Commission applied this ordinance by holding a hearing and deciding against revocation. Therefore, the County Commission had subject matter jurisdiction over this matter and this court does too. *See Northern Monticello All.*, 2022 UT 10, ¶ 35 n.12 (clearly contemplating appeal of a decision not to revoke or enforce).

correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *McElhaney v. City of Moab*, 2017 UT 65, ¶ 26, 423 P.3d 1284.

ANALYSIS

¶12    Two issues remain unresolved. First, NMA asserts that the district court wrongly concluded that the County Commission's decision, which upheld the Planning Commission's decision not to revoke the CUP, was supported by substantial evidence because the Planning Commission's decision failed to include written findings or conclusions. NMA maintains that this failure rendered that decision—and, accordingly, the County Commission's decision—inherently arbitrary and capricious. Second, NMA argues that the County Commission could not properly reconsider its own final decision as no statute or ordinance authorized such action. We do not reach this issue because we reverse and remand to the district court on the first issue.

¶13    NMA argues that the district court's grant of summary judgment was erroneous because the district court could not conclude as a matter of law that the County Commission's decision was supported by substantial evidence since both tiers of appellate review were poisoned by the lack of adequate written findings from the Planning Commission.[7] We agree. As discussed

_____

7. Appellees argue that this issue was not properly preserved. We disagree. Appellees assert that NMA failed to timely object to the adequacy of the Planning Commission's "report"—referring to the Planning Commission's emailed brief to the County Commission on appeal. However, this brief came after NMA had begun its appeal and was not a published report—NMA did not fail to preserve this claim by not objecting to it. Instead, NMA appealed to the County Commission and "challenge[d] the

(continued…)

below, the Planning Commission was the only body authorized to accept evidence and make factual findings. The County Commission and district court were then restricted in their reviews to examining the Planning Commission's record and determining whether its findings and conclusions were supported by substantial evidence. Because the Planning Commission failed to provide written findings adequate for appellate review, its decision and the County Commission's decisions upholding it were arbitrary and capricious, and the district court was wrong to conclude otherwise.

## I. The Scope and Standard of Review

¶14    As an initial matter, Appellees are correct that the decision we are reviewing is the district court's. "[I]n the appeal of an administrative order, we review the intermediate court's decision. We afford no deference to the intermediate court's decision and apply the statutorily defined standard to determine whether the

---

[Planning] Commission's decision[,] . . . asserting that it was not supported by substantial evidence." And since then, both of NMA's appeals to the district court have claimed that the County Commission's decisions were arbitrary and capricious as unsupported by substantial evidence. Along the way, the supreme court published its decision in *McElhaney v. City of Moab*, 2017 UT 65, 423 P.3d 1284, clarifying that meeting the substantial evidence standard requires written findings and conclusions. *See id.* ¶ 41. So our review of whether the district court was correct in concluding that the County Commission's decision was supported by substantial evidence is guided by this clarification. And because the County Commission erroneously concluded that the Planning Commission's decision was supported by substantial evidence, we apply this requirement clarified in *McElhaney* to the Planning Commission. Accordingly, NMA's argument relying on *McElhaney* is not a new argument that NMA has made in this appeal.

court correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *McElhaney v. City of Moab*, 2017 UT 65, ¶ 26, 423 P.3d 1284.

¶15 In *McElhaney*, homeowners appealed a decision of the Moab City Council denying them "a conditional use permit to operate a bed and breakfast in their residential neighborhood." *Id.* ¶ 1. The city council members had orally announced their votes and "explained the rationale behind [each] vote," but "[t]he Council did not make explicit findings on whether the proposal met the requirements" of the applicable municipal code. *Id.* ¶ 7. The homeowners appealed to the district court, which overturned the city council's decision. *Id.* ¶¶ 12–13. On the city council's subsequent appeal, the supreme court addressed the question of whether the court was reviewing the decision of the administrative agency or of the lower court, acknowledging that there were "two ways in which our case law can be read." *Id.* ¶ 17. The court clarified that it "review[s] the intermediate court's decision" but "gives no presumption of correctness to the intervening court decision, since the lower court's review of the administrative record is not more advantaged than the appellate court's review." *Id.* ¶¶ 18, 26 (cleaned up).

¶16 Ultimately, we review the same level of decision the *McElhaney* court did: the district court's. The district court was the intermediate court here, and the district court was not more advantaged than we are in reviewing the administrative decision. Therefore, we determine whether the district court erred in granting summary judgment to Appellees and, like in *McElhaney*, we give no deference to the district court's ruling. "A court may grant summary judgment only if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Robinson v. Jones Waldo Holbrook & McDonough, PC*, 2016 UT App 34, ¶ 24, 369 P.3d 119 (cleaned up).

¶17    The district court erred in granting summary judgment to Appellees because only the Planning Commission was authorized to take evidence and find facts in this case, and the Planning Commission's failure to produce adequate written findings was a fatal flaw that rendered the Remand Decision arbitrary and capricious. The relevant statutes are clear that the scope of review on appeal—for both the district court and the County Commission—was restricted to the record and to the factual findings made by the Planning Commission; in other words, the Planning Commission is the only entity in this process that was authorized to take evidence and make factual findings. Because the Planning Commission never made factual findings, the County Commission could not properly review them. Therefore, its decision, which upheld the Planning Commission's decision, was inherently arbitrary and capricious. *See* Utah Code §§ 17-27a-801(3), -707 (2015); San Juan County, Utah, Zoning Ordinance § 6-10 (2011).

¶18    First, the district court was limited when reviewing the County Commission's Remand Decision to "(i) presum[ing] that a decision, ordinance, or regulation made under the authority of [CLUDMA] is valid; and (ii) determin[ing] *only* whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal." Utah Code § 17-27a-801(3)(a) (2015) (emphasis added).[8] Moreover, "[a] final decision of a land use authority or an appeal authority is valid if the decision is supported by substantial

---

8. This version of the statute was in effect at the time NMA filed its second appeal with the district court on March 23, 2017. The current version states that "[a] court shall presume that a final decision of a land use authority or an appeal authority is valid unless the land use decision is: (i) arbitrary and capricious; or (ii) illegal." Utah Code § 17-27a-801(3)(b). Subsection (c)(i) indicates that "[a] land use decision is arbitrary and capricious if the land use decision is not supported by substantial evidence in the record." *Id.* § 17-27a-801(3)(c)(i).

evidence *in the record* and is not arbitrary, capricious, or illegal." *Id.* § 17-27a-801(3)(c) (emphasis added). Therefore, the district court's review was limited to the record; it was not able to accept new evidence or make factual findings.

¶19 The County Commission's review was similarly limited. "A county may, by ordinance, designate the standard of review for appeals of land use authority decisions." *Id.* § 17-27a-707(1) (2015). "If the county fails to designate a standard of review of factual matters, the appeal authority shall review the matter de novo." *Id.* § 17-27a-707(2). San Juan County Zoning Ordinance section 2-2(2)(e) declares that "[t]he Appeal Authority shall[,] upon appeal, presume that the decision applying the land use ordinance is valid and determine *only* whether or not the decision is arbitrary, capricious, or illegal." (Emphasis added.) Therefore, San Juan County specified a standard of review that was deferential to the Planning Commission. Because the County Commission could "determine *only* whether or not the decision [was] arbitrary, capricious, or illegal," it was also not authorized to consider evidence beyond the record or to make its own factual findings. As neither the district court nor the County Commission could do so, both bodies necessarily were limited to the record that had been before the Planning Commission and to the factual findings made by the Planning Commission—of which there were none.

¶20 Both the district court and the County Commission did, in fact, give deference to the decision below and purport to limit their review to the record.[9] The district court concluded that the

---

9. As discussed above, *see supra* note 4, it appears that the Planning Commission did not transmit the evidence it relied on in a record to the County Commission. This uncertainty about the record is highly problematic given that the County Commission was, by ordinance, limited in its review to the record. The County

(continued…)

Remand Decision was supported by substantial evidence by incorporating its reasoning in *NMA I*, which stated,

> Under Utah Code § 17-27a-801, the district court has authority to reverse the decision of a land use authority if the decision is "arbitrary, capricious, or illegal." The court is required to presume that the decision is valid[,] and its review is limited to the record provided to it.
>
> A decision is arbitrary and capricious when it is not supported by substantial evidence. The County's decision to reverse its earlier order was based on its failure to consider "two three ring binders of information" on [sPower's] mitigation efforts. In these binders, the County found sound, light, and flicker studies that it relied on to conclude that [sPower's] mitigation efforts met the requirements of the permit. Accordingly, the court cannot find that the County's decision was unsupported by substantial evidence.

(Footnotes omitted.) It is clear from this that the district court endeavored to limit its review to the record provided to it by the County Commission and deferred to that body's conclusion that its decision was supported by the evidence.

¶21   Likewise, the County Commission stated in its Remand Decision that its review had been limited to the record and was

---

Commission apparently did not recognize any of the evidence as new evidence (referring to the binders as "information [sPower] had provided to the Planning Commission" and "[e]vidence of [m]itigation [a]vailable in the [r]ecord"). But if any evidence given to the County Commission was new, the County Commission was not authorized to take such evidence, and remand would still be appropriate and necessary.

deferential to the Planning Commission. Although the County Commission on remand "requested supplemental briefs from both sPower and NMA . . . and heard arguments from attorneys for both [parties]," it "instructed the parties on rehearing not to present [it] with any new evidence not already in the record." The County Commission explained its rationale:

> We did so because the purpose of our rehearing was solely to consider sPower's request for reconsideration based upon its complaint that, contrary to our finding, it had indeed provided evidence of mitigation beyond its bare representations. The parties generally complied with our direction. Each party presented us with a handout during the rehearing. We consider those demonstrative and do not otherwise rely on them as a basis for our decision. Objections were also raised to statements made during the hearing as outside the record, and we have tried to avoid such statements in rendering this decision.

Therefore, each relevant stage of review was restricted to the record before the Planning Commission and has been deferential to the Planning Commission's decision. Both the district court and the County Commission have limited their reviews to determining whether the decision below was arbitrary and capricious. However, stating that a court or appeal authority is limiting its review to the evidence below makes sense only if that body is comparing the evidence in the record to actual findings made by a body empowered to make those findings. Without findings against which to judge whether substantial evidence exists to support them, a review of the evidence is—in reality—a de novo review. Because the applicable standard requires a decision to be supported by substantial evidence (discussed below) and because the Planning Commission—the only body authorized to accept evidence—did not produce findings and

conclusions capable of meeting this standard, the chain of deferential review contained a fatal flaw.

## II. Substantial Evidence

¶22    "A local government's land use decision . . . is arbitrary and capricious . . . if it is not supported by substantial evidence." *Uintah Mountain RTC, LLC v. Duchesne County*, 2005 UT App 565, ¶ 19, 127 P.3d 1270 (cleaned up); *see also Springville Citizens for a Better Cmty. v. City of Springville*, 1999 UT 25, ¶ 24, 979 P.2d 332 ("A municipality's land use decision is arbitrary and capricious if it is not supported by substantial evidence.").

¶23    In *McElhaney*, the supreme court determined that the decision of the land use authority was not supported by substantial evidence because that body did not produce written findings of fact. *McElhaney v. City of Moab*, 2017 UT 65, ¶ 41, 423 P.3d 1284. The city council "concluded that the proposed . . . use did not meet the criteria set forth in Moab's Municipal Code but prepared no written findings of fact." *Id.* ¶ 39. While "[t]he district court noted, and indeed, complained about the absence of findings," rather than remand to the city council, it "valiantly attempted to fill the void by parsing the comments neighbors made at [c]ouncil meetings." *Id.* ¶ 40. The supreme court "commend[ed] the district court" for this effort but found error because "it was the [c]ouncil's responsibility to define the basis for its decision, not the district court's." *Id.* The supreme court stated,

> Without sufficiently detailed findings that disclose the steps by which an administrative agency reaches its ultimate factual conclusions, this court cannot perform its duty of reviewing the order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action. On appeal, a court can perform its duty only if the [land use

authority] has created findings revealing the evidence upon which it relies, the law upon which it relies, and its interpretation of the law.

*Id.* ¶ 36 (cleaned up).

¶24 While at first glance it appears that *McElhaney* is distinguishable from this case because here there was an additional layer of appellate review (the County Commission), *McElhaney* applies across the board. As discussed above, only the Planning Commission was authorized by statute and ordinance to accept evidence and make factual findings. Therefore, the County Commission's decision necessarily must rely on the Planning Commission's factfinding, and we must look to the Planning Commission's findings in our substantial evidence analysis. Appellees state that "*McElhaney* stands for the unsurprising conclusion that, in order for a district court to effectively review a land use authority's decision, the land use authority must transmit sufficient findings of fact and conclusions of law to the district court to enable that review." But our substantial evidence analysis must consider the Planning Commission's decision because the County Commission here acted as the appeal authority—not the land use authority. Like in *McElhaney*, the land use authority made no written findings. *See id.* ¶ 39. Also like in *McElhaney*, the appeal authority recognized as much. *See id.* ¶ 40. So, just as it did in *McElhaney*, this deficiency prevented appropriate appellate review by the appeal authority— here by both appeal authorities, namely the County Commission and the district court. *See id.* ¶¶ 40–41; *see also Davis County v. Clearfield City*, 756 P.2d 704, 711 (Utah Ct. App. 1988) (discussing both a planning commission land use decision and its appeal to the city council where "the [p]lanning [c]ommission's refusal to furnish written findings, or at least provide the basis for its decision so that [the applicant] could intelligently respond on appeal to the [c]ity [c]ouncil, tended to suggest there was no rational basis for the [p]lanning [c]ommission's decision").

¶25 Appellees argue that the Planning Commission's emailed brief to the County Commission qualifies as sufficient written findings, but the brief was emailed from the Planning Commission to the County Commission after NMA's appeal had begun and was not published or otherwise clearly available to NMA to defend against in its appeal. Even if the brief could qualify as a source for the Planning Commission's written findings, the "findings" therein are clearly inadequate. The brief states,

> The [Planning Commission] also decided that mitigation had been addressed as much as could be possible at this time.
>
> . . . .
>
> As stated above, at the September 9, 2015 Planning Commission meeting, the [Planning Commission] received information and evidence concerning the Permittees efforts to mitigate the harm of its project on others. In the Permittee's presentation, the [Planning Commission] received studies concerning sound, flicker, and light. It received information on thresholds and how they were determined and what neighboring lands were affected. Exhibit 2. Please see attached Minutes San Juan County Planning and Zoning September 9, 2015. On September 14, 2015, the [Planning Commission] decided by unanimous vote that as much mitigation as possible had occurred under the conditions it set for the project in 2012. Exhibit 3. Please see attached Minutes San Juan County Planning and Zoning September 14, 2015.

The referenced minutes are no more detailed. The minutes from September 9, 2015, indicate, "Studies were done relating to sound, flicker, and light. Thresholds were determined and affected lands

were indicated. Mitigation for lands affected were determined and compensation amounts decided." And the minutes from September 14, 2015, state, "The other issue was whether any mitigation for sound, light, and flicker had taken place. This is a more subjective issue and not black and white. It was determined that mitigation had taken place as much as possible at this time." These cursory declarations are wholly inadequate. They certainly fall well short of being "sufficiently detailed findings that disclose the steps by which an administrative agency reache[d] its ultimate factual conclusions." *McElhaney*, 2017 UT 65, ¶ 36 (cleaned up). Accordingly, neither the County Commission nor the district court could "perform its duty of reviewing the [administrative decision] in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action." *Id.* (cleaned up).

¶26 And, like in *McElhaney*, this court cannot rely on findings drafted in the course of an administrative appeal as a substitute for the required findings of the land use authority.[10] While the County Commission in its Amended Decision attempted to identify the evidence it relied on in determining that the Planning Commission's decision was supported by substantial evidence, this effort cannot rehabilitate the Planning Commission's

---

10. Appellees assert that NMA failed to argue "that the [C]ounty [C]ommission's written decisions were inadequate to allow the district court's substantial evidence review," but they are incorrect. NMA states that "[e]ven if the [d]istrict [c]ourt or the County Commission were entitled to correct the insufficiencies in the [Planning Commission's] decision, they failed to do so. The Remand Decision is devoid of any findings of fact or rationale for upholding the [Planning Commission's] decision." NMA has consistently argued that the lack of written findings and conclusions from the Planning Commission has thwarted an appropriate substantial evidence review at both the County Commission and district court levels. NMA is right.

deficiency because the County Commission was not permitted to perform factfinding. And besides, the Amended Decision explicitly relied on the Planning Commission's assumed, unwritten findings concerning sound mitigation efforts, stating, "[W]e defer to the Planning Commission's decision that the industry standards and EPA standards for exterior noise is a reasonable threshold under the Latigo CUP and that it was met." Furthermore, the Amended Decision was ultimately vacated, and the Remand Decision contains no attempt to provide findings of fact, merely concluding that it "cannot say that the Planning Commission's decision not to revoke the Latigo CUP lacked substantial evidence . . . [i]n light of the record evidence." This, too, fails to reveal "the evidence upon which it relies, the law upon which it relies, and its interpretation of the law" required for a land use authority's findings. *Id.* (cleaned up). Therefore, the County Commission's decisions lacked substantial evidence, and the district court erred in concluding otherwise. Accordingly, the district court's grant of summary judgment is erroneous because the lack of adequate written findings renders the County Commission's decision arbitrary and capricious and, consequently, Appellees are not entitled to judgment as a matter of law.[11]

---

11. NMA asserts that the County Commission erred in failing to consider evidence that NMA provided on appeal and that the district court "made no effort to consider evidence that 'fairly detracted' from sPower's position, in contravention of Utah's substantial evidence standard." Because we are reversing on other grounds, we need not address this argument. But it is worth noting that because both the County Commission and the district court are limited in their review to the record of the Planning Commission, any evidence NMA has submitted on appeal was outside the scope of review. Therefore, neither body erred in failing to consider evidence NMA offered for the first time on

(continued…)

CONCLUSION

¶27 Ultimately, the County Commission's Remand Decision was not supported by substantial evidence and was therefore arbitrary and capricious. Accordingly, the district court erred in granting summary judgment to Appellees. We reverse the summary judgment and remand to the district court for further proceedings consistent with this opinion.

––––––––––

appeal. Additionally, the supreme court clarified that while "NMA had a right to appeal the Planning Commission's decision not to revoke the CUP," this did not "necessarily provide[] it with the right to participate in the revocation hearing." *Northern Monticello All.*, 2022 UT 10, ¶ 2. Similarly, our decision does not confer that right. Even if the Planning Commission reconsiders revocation in a new hearing, NMA does not necessarily have a right to present evidence therein.